THE MOLINE WATER POWER COMPANY, Appellant, *vs.*
PLEASANT F. COX, County Treasurer, *et al.* Appellees.

*Opinion filed December 21, 1911.*

1. REAL PROPERTY—*what amounts to a grant of the fee simple.*
A grant by a water power company to the United States of "the
unrestricted use in perpetuity, without charge, of so much of the
bed of the river not already belonging to the United States as may
be covered by the pool and wall, necessary to develop the water
power, and ten feet outside of the said wall," is a grant of the
fee simple.

2. SAME—*right to use water power is an interest in real estate.*
The use of a fall of water artificially impounded is the taking of
that which has been produced by the combination of artificial
means and natural forces and partakes of the nature of a *profit
à prendre,* and the right to such use is an interest in the aggre-
gate of rights constituting the water power, which is real estate.

3. TAXES—*State laws concerning taxation do not apply where
the United States has exclusive jurisdiction.* The laws of Illinois
concerning taxation have no application to places over which Con-
gress has the exclusive power of legislation in all matters.

4. SAME—*when right to water power is exempt from taxation.*
The right to water power, which is an interest in real estate, is
exempt from taxation where the situs of such power is a place
which has been acquired by the United States and over which
Congress has the exclusive power of legislation.

5. SAME—*equity will enjoin the collection of tax upon exempt
property.* A court of equity will enjoin the collection of a tax
upon property which is exempt from taxation.

6. SAME—*when assessment of franchise of corporation by lo-
cal assessor is void.* A corporation having the power, in addition
to manufacturing, to own real estate and water power and to lease
or sell water power to others for manufacturing purposes, is not
of the class of corporations whose franchises may be assessed by
the local assessor, and an assessment of the franchise of such cor-
poration by the local assessor is void and the collection of the tax
based thereon may be enjoined.

7. SAME—*a person charged with tax on property he does not
own may enjoin collection of tax.* A person is not bound to an-
ticipate that the assessor will assess property to him which he
does not own, and if such assessment is made without his knowl-

edge he has a right to enjoin the collection of the tax and is not limited to a remedy before the board of review.

8. SAME—*assessor not bound by items or valuation in unsworn schedule.* The assessor is not bound by the items or valuations appearing in an unsworn schedule given to him by the president of a corporation, and the fact that the assessor may subsequently complete the assessment by adding property of the corporation omitted therefrom is a matter of which the corporation is bound to take notice.

HAND and VICKERS, JJ., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding.

PEEK & DIETZ, and WILLIAM A. MEESE, (ALBERT M. KALES, of counsel,) for appellant.

L. M. MAGILL, State's Attorney, (W. R. MOORE, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Moline Water Power Company began a suit in the circuit court of Rock Island county to enjoin the collection of certain taxes extended against it, and the court having sustained a demurrer and dismissed the bill for want of equity it has appealed.

From the averments of the bill it appears that the appellant is a corporation created by a special act of the legislature in force February 16, 1865, and authorized to own real estate and a part or all of the water power at Moline, to carry on such manufacturing business as it may desire, and to lease or sell water power or lands to others for that purpose; that on April 1, 1909, it owned certain real estate along the south side of the slough of the Mississippi river separating the island of Rock Island from the mainland, and also other lands, upon which taxes had been levied for many years and all the taxes assessed against said real estate have been paid; that appellant's other property

consisted of manufacturer's tools, implements and machinery of the value of $15,000, office furniture of the value of $50, and $1325 cash, besides a right to receive one-fourth of all the water power developed by the United States in the slough of the Mississippi river lying between the island of Rock Island and the Illinois mainland, by virtue of a writing executed by the appellant and the Secretary of War of the United States, and the appellant owned no other property; that by its president it made out and delivered to the assessor a schedule of the items of property mentioned, for taxation, which was accepted by the assessor without any question as to such items or their value, and that the tax on the amount of said items is $291.48, which has been tendered both to the town collector and the county collector, but they have refused to accept said payment; that the assessor, secretly and without notice to the appellant, raised the valuation of the item "manufacturer's tools, implements and machinery" from $15,000 to $35,000, and added to the schedule the following items: "Building on dam, investments in real estate and imp. thereon, (see sec. 10,) $23,625; all other personal property required to be listed, $140,000;" that the action of the assessor was without the knowledge of the appellant, and that it never had any notice thereof until February 25, 1910, when one of its officers went to the office of the town collector and then first learned of the changes made in the schedule, and that the amount of personal taxes charged against the appellant had thereby been increased to $3560.

It is averred that the increase of $20,000 in the valuation of "manufacturer's tools, implements and machinery" was brought about by including therein machinery which did not belong to and was neither used by nor in the possession or control of the appellant, being three generators and two exciters, which were on April 1, 1909, the property of the People's Power Company and were in its possession and control; that the item "building on dam," etc.,

referred to a power house built upon a dam, the property of the United States; and that the item "all other personal property required to be listed, $140,000," represents the value of the appellant's alleged water power which it enjoys under a contract with the United States, ascertained by determining the capital sum which at five per cent will produce the income estimated to be received from the use of the water power, and in addition thereto the intangible property of the appellant represented by its franchise to be a corporation and the good will of its business.

The bill sets forth, in detail, the origin and nature of the appellant's right to use the water power, substantially as follows: Between the island of Rock Island and the mainland is a slough or narrow channel of the Mississippi river having sufficient fall for the development of a water power. In 1865 the appellant became the owner of the land on the south side of the slough and the south half of the bed of the slough, and of the right to erect and maintain a dam across the slough and to attach it to the north shore, and did maintain a dam across the slough and develop a water power. In 1862 provision was made by an act of Congress for the establishment of a national arsenal on Rock Island, and in 1864 an act was passed providing for the acquisition of all adverse claims to any part of the island. In 1866 an appropriation of $100,000 was made for securing the water power. In that same year the Secretary of War took possession of the whole of the island and the whole of the water power, and they have ever since been held by the United States as a military reservation, for a national arsenal. Under the act of Congress awards were made by commissioners appointed pursuant to its provisions, of the sums to be paid adverse claimants to different parts of the island, which were accepted and paid, but no award was made as to the water power of the appellant. In regard to the water power the commissioners reported that they had negotiated for a transfer of the en-

tire water power from the appellant to the United States, and had agreed upon a basis for the settlement of all questions pending between the appellant and the United States, the adoption of which by the war department was recommended. The basis agreed upon was as follows:

"*First*—The Moline Water Power Company to convey to the United States the fee of the entire Moline water power, and also to grant to the United States the unrestricted use in perpetuity, without charge, of so much of the bed of the river not already belonging to the United States as may be covered by the pool and wall, necessary to develop the water power, and ten feet outside of said wall, together with the right of access thereto from the Illinois shore at all times, for the purpose of constructing or repairing said wall.

"*Second*—The government to develop and maintain the power, so far as it can be done with the money heretofore appropriated and that which may hereafter be appropriated by Congress for that purpose.

"*Third*—The Moline Water Power Company to have the use in perpetuity, free from all charge for rent or repairs, of one-fourth of the entire water power developed, and also the right to rent for a specified time, at the rate of fifty cents per annum per square inch of water power, measured by the openings of water wheels, so much additional power as the ordnance department may deem expedient. And further, that the company, its lessees or assigns, shall have the right to place their wheels upon the ten feet outside the wall, provided that the foundation of said wall shall not thereby be disturbed nor the stability of the wall thereby endangered; and also, further, that this granting to the United States of the unrestricted use of the pool, the wall and the ten feet outside the wall shall not be so construed as in any manner to operate as a bar to the free use and occupancy by the company, its lessees or assigns, of the same premises for all purposes connected

with and incidental to the use of their portion of the water power or such as may be leased by them, and such use shall not interfere with or obstruct the United States in the free use of its portion of the water power.

"*Fourth*—The works to be built by the government for the development of the power to be so arranged as to give the company the free use of all the power herein contemplated to be used by the company, both as to the use of the fourth part, so far as may be practicable without impairing the power in use by the government to a disproportionate extent, and also to the proposed power to be leased. The openings in the dams intended for the use of the company to be of such size and in such position as the company may elect.

"*Fifth*—Sixty thousand dollars of the present appropriation to be applied to the extension of the present stone dam on the Moline side, and $40,000 to the extension and repairs of the wing dam and removal of such deposits as may be required for the extension and repairs of said wing dam. The use of the present water power shall not be unnecessarily obstructed during the construction of the proposed work, nor shall any rent be required until the improvement contemplated by the $100,000 appropriation shall have been made.

"*Sixth*—It is also further understood that neither occupant of the above water power shall have the right to, nor shall allow others to, obstruct either pool or waterway by sawdust or bark or other substances, to the detriment of the water power or the sanitary condition of the vicinity."

By a joint resolution of Congress the Secretary of War was authorized to carry into effect the recommendation of the commissioners in relation to the water power, and pursuant to such authority an agreement was entered into in the summer of 1867 between the United States and the appellant which provided as follows:

252—23

"*First*—The Moline Water Power Company, for the considerations hereinafter mentioned, hereby conveys in fee to the United States of America their entire water power, with the free and unrestricted use by the said United States of so much of the bed of the Mississippi river as may be required for the further development of said water power, which development, together with the maintenance of that power, is to be done by the United States out of the appropriation applicable to those purposes, and of any future appropriations that may be made applicable to the same.

"*Second*—The United States of America hereby grants to the Moline Water Power Company the right of the free use of one-fourth of the entire water power above conveyed, and the privilege of renting for a specified time, at the rate of fifty cents per annum per square inch, so much additional water power as the Secretary of War may deem it expedient to authorize to be rented; and also agrees to arrange the government works for developing the water power in such a manner as to enable the Moline Water Power Company to avail itself of the right and privilege above mentioned.

"*Third*—The United States of America hereby agrees to apply $40,000, or so much thereof as the war department may consider necessary, to complete the wing dam, and the residue of the appropriation of $100,000 to the dam on the Moline side; and further, not to obstruct unnecessarily the use of the present water power during the execution of the work above stated, nor to require the payment of any rent until the improvement contemplated thereby shall have been made, so far as the expenditure of the $100,000 will permit.

"*Fourth*—It is mutually agreed between the Moline Water Power Company and the United States of America that neither of them shall at any time make any obstruction of the water power as now existing or hereafter to be developed. It being further understood that this agree-

ment is for the purpose of carrying out the recommendation of the commissioners appointed under the acts of April 19, 1864, and June 27, 1866, relative to the Moline Water Power Company and water power at Rock Island, Illinois, and that the recommendation of said commissioners now on file in the war department at Washington City is regarded as part of this agreement."

A supplementary agreement, not material to be here set out, was afterward entered into, and under these agreements the United States has constructed dams, and has been continuously in the exclusive possession and control of the dams, the bed of the slough and the entire water power, subject only to the obligation to permit the appellant to have the use of one-fourth of the water power developed, and the possession and control of the said dams, slough and water power are necessary to the United States for the carrying on of its work at said arsenal. The appellant has never used the power itself, but has taken it at the dam and transmitted it to others whom it has permitted, for hire, to use it.

The assessment was made of the water power right as personal property. The cause has been argued by both parties on the theory that it is personal property, though the appellant insists that if it is an interest in real estate it is still exempt from taxation. In our judgment the appellant's right to use the water power must be regarded as an interest in real estate. It is not strictly an easement, which is a privilege, without profit, which the owner of one tenement has in that of another, by which the latter is obliged to suffer something or to refrain from doing something on his own land for the advantage of the former. (Gale on Easements, 8.) A dominant as well as a servient estate is essential to an easement. While appellant was the owner of land adjacent to the dam, it is manifest that the water power was not granted as appurtenant to this land. The bill avers that the appellant never did use the power on its

own land, but, with the acquiescence and approval of the United States from the beginning, contracted for the use, for hire, of said power by various persons and corporations owning manufacturing plants on the shore; that it had so used the power before the transfer to the United States and continued to do so afterward. There is no indication that any change in the appellant's method of conducting its business was anticipated or that it was intended to restrict the use of the power to the land which the appellant then owned, as would have resulted if the power had been appurtenant to that land. The right to use the water power was not granted to be exercised only in connection with the occupancy of the appellant's lands. There was therefore no dominant estate, but the burden imposed upon the entire water power was in favor, not of any particular land, but of the appellant. Rights of this sort, which one may exercise in another's land without regard to the occupancy of any land in connection with which the use exists, are sometimes called easements in gross or rights in gross. Such a right is ordinarily a mere personal right in the land of another which is neither assignable nor inheritable. (*Garrison* v. *Rudd,* 19 Ill. 558.) The right to enter upon land and take away a part of the soil or its produce, as to cut grass, to pasture the land, to take gravel or minerals, is not an easement, which is by its definition without profit, but is called a *profit à prendre,* and though in gross may be inheritable and assignable. It is really an interest in the land itself. (*Post* v. *Pearsall,* 22 Wend. 425; *Cadwalader* v. *Bailey,* 17 R. I. 495.) Running water is not the subject of property, (*Druley* v. *Adam,* 102 Ill. 177,) and therefore the right to enter upon another's land and take water from a natural spring or stream is an easement, but the right to take it from cisterns or wells, where it has been artificially produced, is a *profit à prendre.* (*Hill* v. *Lord,* 48 Me. 83; *Race* v. *Ward,* 4 E. & B. 702.) The head of water raised by damming a stream and impounding the

water is not power, but it is the source of power and is produced artificially.  Power is not a chattel.  It is not a tangible entity.  It manifests itself only by its results.  It is merely a source of .mechanical energy.  But it is property, and is bought and sold in the market as freely as the products of the farm.  At common law it could not be the subject of larceny, which must be of goods and chattels, but it is now protected by statute to the same extent as other forms of property, and the unauthorized connection of any gas, water or electric current with a motor or other appliance is a misdemeanor, punishable by law.  (Crim. Code, par. 117.)  The use of a fall of water artificially impounded is the taking of that which has been produced by the combination of artificial means and natural forces, and partakes of the nature of a *profit à prendre*.  It is, in fact, an interest in the aggregate of rights constituting the water power, which is real estate.

It is insisted on behalf of the appellant that if its interest is to be regarded as real estate it is exempt from taxation because it is an interest in land belonging to the United States.  By section 8 of article 1 of the constitution of the United States it is provided that "the Congress shall have power  *  *  *  to exercise exclusive legislation in all cases whatsoever over  *  *  *  all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings."  By an act of the legislature in force April 1, 1867, (Laws of 1867, p. 175,) the State ceded to the United States jurisdiction over the island of Rock Island, Benham's, Wilson's and Winnebago islands, and their shores, taken and assigned by the United States for an arsenal and armory.  On December 14, 1871, another act was passed, section 2 of which provided that the United States may enter upon and occupy any land which may have been or may be purchased or condemned or otherwise acquired, and shall have the

right of exclusive legislation and concurrent jurisdiction, together with the State of Illinois, over such land and the structures thereon, and shall hold the same exempt from all State, county and municipal taxation. (Hurd's Stat. 1909, p. 2255.) By these acts the State signified its consent to the acquisition by the United States of the land and water power for the arsenal. Thereupon, by the constitution of the United States as well as by the act of the legislature, Congress became vested with the power to exercise exclusive legislation, in all cases whatsoever, over the places so acquired. If Congress had exclusive legislation over those places, then the legislation of Illinois in regard to taxation had no application to them.

Prior to the negotiations with the United States the appellant was the owner of land on the south side of the slough, the south half of the bed of the slough, the dam, and the right to attach the dam to the north shore. By the agreement in pursuance of the negotiations it conveyed to the United States the entire water power in fee, including the bed of the slough, the dam and ten feet outside of it. When it conveyed "the unrestricted use in perpetuity, without charge, of so much of the bed of the river not already belonging to the United States as may be covered by the pool and wall, necessary to develop the water power, and ten feet outside of said wall," nothing remained to the grantor. A grant of the unrestricted use of real estate in perpetuity, without charge, is a grant of the fee simple. The interest of the appellant thereafter was its interest in the water power granted to it by the United States. This was an interest in the real estate. Its situs was the place which had been acquired by the United States. Over that place the tax laws of Illinois did not reach, for Congress had there the exclusive power of legislation. Equity will enjoin the collection of a tax upon property exempt from taxation. *Siegfried* v. *Raymond,* 190 Ill. 424.

The appellant's interest in the water power was real estate and was exempt from taxation. It was assessed as personalty, along with the franchise and good will of the appellant, by the local assessor. Section 3 of the Revenue act requires the franchises of all corporations created under the laws of this State, except those organized for purely manufacturing and mercantile purposes, or for either of such purposes, or for the mining and sale of coal, or for printing, or for the publishing of newspapers, or for 'the improving and breeding of stock, to be valued by the State Board of Equalization and not by the local assessor. That the appellant is not one of the excepted corporations appears from the powers granted by its charter, which are, besides manufacturing, to own real estate and part or all of the water power at Moline, and to lease or sell water power to others for manufacturing purposes. (*Evanston Illuminating Co.* v. *Kochersperger,* 175 Ill. 26.) An assessment of the appellant's franchise by the local assessor would therefore be void and the collection of a tax extended on such assessment would be enjoined. *Chicago and Milwaukee Electric Railway Co.* v. *Vollman,* 213 Ill. 609.

In regard to the assessment of "manufacturer's tools," etc., the averment of the bill is that the assessment in excess of $15,000 arose from the assessment of three generators and two exciters which were not the property of the appellant. A tax extended against a person upon an assessment of property which he does not own is illegal and levied without authority of law, and its collection will be enjoined. (*Irvin* v. *New Orleans, St. Louis and Chicago Railroad Co.* 94 Ill. 105; *Searing* v. *Heavysides,* 106 id. 85.) It is said that the appellant, if not satisfied with the assessment, should have appeared before the board of review and had it corrected. The complaint, however, is not about the valuation of its property. With that the complainant is satisfied and it has tendered the tax due thereon. It was bound to know that its property would be

assessed and to ascertain the amount, and it had its remedy before the board of review if not satisfied. It was not bound to anticipate that the assessor would assess to it property owned by another person. Such assessment made without the appellant's knowledge was void, and it was not limited to a remedy before the board of review.

In regard to the building on the dam, the averment is that the appellant, with the consent and permission of the United States, has built upon and annexed to and made a part of said dam a substantial brick power house, in which is contained machinery for the generation of electrical current. The terms of the agreement by virtue of which such permission was granted are not set out, and it does not clearly appear that the power house and machinery therein may not be personal property having its situs at the residence of the owner, and as to this item the bill was not sufficient to entitle the appellant to relief. It is said that this item was added secretly and without the knowledge of the appellant by the assessor after he had accepted the appellant's schedule. All that appears from the bill with reference to this is, that the appellant's president made out a schedule, which was not sworn to, and delivered it to the assessor, who took it. No other act of the assessor is shown. He was in no way bound by the items or valuations stated in the schedule. He did not insert the items, fix the valuations, agree to them or even at the time know what they were, so far as the averment of the bill goes. He did nothing to deceive the appellant, and his act in subsequently completing the assessment was one of which the appellant was bound to take notice.

As to the water power, which was not subject to taxation, and the franchise and good will, the assessment of which by the local assessor was void, the two constituting the item "all other property required to be listed," and as to the amount of $20,000 in the item "manufacturer's tools," etc., upon the generators and exciters not owned by

the appellant, the amended bill was sufficient to entitle the appellant to an injunction.

The decree is reversed and the cause remanded to the circuit court, with directions to overrule the demurrer to the amended bill.

*Reversed and remanded, with directions.*

HAND and VICKERS, JJ., dissenting.