(No. 24204.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* GUST MENAGAS, Defendant in Error.

*Opinion filed October 22, 1937—Rehearing denied Dec. 9, 1937.*

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR VARNES, and ROBERT E. WRIGHT, of counsel,) for the People.

DANIEL H. LEWIS, (IRWIN S. BASKES, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The question in this case concerns the validity of an indictment filed in the criminal court of Cook county against the defendant in error, Gust Menagas, charging him with the larceny of 70,601 kilowatt hours of electric current and energy, each kilowatt hour of the value of three cents, the same being the personal property of Commonwealth Edison Company. The indictment was quashed on motion of the defendant and the People sued out this writ of error. The motion to quash was based on two primary grounds: (1) That electric current and energy is not a subject of larceny, and (2) section 117 of the Criminal Code, (State Bar Stat. 1935, chap. 38, par. 279,) which provides punishment, as a misdemeanor, for the crime charged in this indictment, prevents the operation of the larceny statute over such offense. Those questions are presented here. Counsel for the defendant urge that electric current and energy is not personalty, tangible or intangible, and thus arises the first question.

For the purpose of assisting the court to understand the nature of electrical energy, the testimony of an electrical engineer was received. He defined electricity as "the motion of electrons." His testimony also shows the following: An electron is the smallest unit of matter reasonably and accurately known to science. These electrons are everywhere, always in motion, moving with the swiftness of light, and when not interfered with they move in circles in an extremely small area, but when driven by a generator, over conductors or wires, the electrons in the wires are forced to go in the path of the conductor instead of in circles and thus go to the point where they are required for use. The energy which these electrons acquire forms the agency for lighting electric lamps, turning electric motors,

and the like. It is a necessary condition, when electrons are being forced through the conductor, that the circuit be complete if electric energy is to be utilized. The electrons pass from the generator out in one wire, through the device or appliance that is to use the power, and back through another wire to the generator. The energy created is exercised through resistance of the device which tends to obstruct the flow of the electrons. The voltage, or force of motion, produced by the generator, acts to push the electrons through such resistance, and it is thus that a lamp bulb is lighted or a motor turned. The unit for the measure of the quantity of flow of electrons is the ampere. A watt is a unit of power, and is the product of one volt of pressure times one ampere of current. A kilowatt is one thousand watts. The unit of measurement of electrical energy as used in an electric light bulb or other appliance is the kilowatt hour. Electrical energy is of two kinds, kinetic and static or potential. When the electrons are going out through the conductor they are charged with potential energy, but when forced through the resistance, such as an electric light bulb or a motor, the potential energy is taken out, and the electrons return to the generator possessing only kinetic energy. Thus by going through the resistance the electrons lose their potential energy. The thing which is expended in the electric light bulb or the electric motor is therefore electrical energy. The thing charged to have been taken or stolen by the defendant in this case was 70,601 kilowatt hours of electrical energy.

Counsel for the defendant say that, as electrons are the only elements of electricity and electrical energy which are matter, and as none of the electrons were consumed but were returned to the generator, there was nothing charged to have been stolen by the defendant that could be made the subject of larceny.

The question then is: Is electrical energy property subject to asportation? It is conceded by the People that it is

intangible, but, they say, it is personal property. Electrical energy is a thing sold to customers. It is measured as an article of merchandise may be measured. It is the subject of contract. Though intangible, it is under the control of the owner of the conductor, and may be carried off by attaching wires to the conductor and extending them to the point where the energy is to be used. It may be stored in a container, as a battery, by connecting a conductor with and charging the battery. While the energy there stored has in it other elements composing the grids of the battery, the essence of electrical energy may thus be stored.

Whether electrical energy is personal property has not heretofore been considered by this court. The question has been considered in numerous other jurisdictions. In *Commonwealth* v. *Northern Electric Light and Power Co.* 145 Pa. St. 105, 22 Atl. 839, it was held that a company dealing in electricity makes or brings it into being as a commodity. The court there said: "Whatever electricity may be, it seems to be absolutely within the power and under the control of the company that brings it into being. It is compelled by the process employed to come into being. It is secured, stored, poured out, or liberated at will. Its manifestations are both seen and felt." *People* v. *Wemple,* 29 N. E. (N. Y.) 808, holds that electrical energy is a commodity; that a company which manufactures and furnishes it is a manufacturing company within the meaning of a statute of that State exempting from taxation certain manufacturing corporations. *Hetherington* v. *Camp Bird Mining Co.* 202 Pac. (Colo.) 1087, was a suit to recover for electric service and power furnished the defendant. It was there held that electricity made by artificial means is a product of manufacture and it is personal property, citing numerous cases. In *Commonwealth* v. *Keystone Electric Light, Heat and Power Co.* 193 Pa. St. 245, 44 Atl. 326, the question was whether the Electric Light, Heat and

Power Company there involved, which manufactured and sold electrical energy, was a manufacturing company, and it was held that as it manufactured the commodity it should be so characterized under the laws of that State. In *Sixty-Seventh South Munn, Inc.* v. *Board of Public Utility Comrs.* 147 Atl. (N. J.) 735, the owner of an apartment building sought to compel the utilities commission to reverse its ruling refusing to direct an electric light company to furnish current to his apartment through one meter, with the privilege to the owner of the building to re-sell it to tenants. The ground of the action was that the electric current or energy is personal property and is a commodity which the plaintiff bought and could, therefore, do with as he pleased. Though denying the relief sought on other grounds, it was said: "All parties to the cause concede and base their contentions upon the proposition that electric current is property." In *State* v. *Interstate Power Co.* 226 N. W. (Neb.) 427, it was argued that electricity or electrical energy is not a commodity, a manufactured product nor an article, but that the furnishing of electricity is the furnishing of service. It was held, however, that as electricity is produced, stored, measured, bought and sold, and may be moved from place to place in containers and cables, and is brought into being as a product, it exists in modern life as a commodity. To like effect are *Millcreek Coal and Coke Co.* v. *Public Service Com.* 84 W. Va. 662, 100 S. E. 557; *Beggs* v. *Edison Electric Light and Illuminating Co.* 96 Ala. 295, 11 So. 381, and *Burk* v. *Mead*, 159 Ind. 252, 64 N. E. 880. In *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 80 L. ed. 688, it was held by the Supreme Court of the United States that water power and electrical energy, generated at a dam constructed by the government, are susceptible to disposition as property belonging to the United States, and that the sale of them, as property, does not encroach upon the rights reserved to the States by the tenth amendment to the constitution of the United States.

Counsel for defendant cite *Moline Water Power Co. v. Cox,* 252 Ill. 348, in support of their argument that electrical energy is not personal property and cannot be made a subject of larceny. In that case the water power rights of the Moline Water Power Company were assessed as personal property. The power company had owned a certain part of the bed of a slough connected with the Mississippi River near the city of Rock Island, and had constructed thereon a dam creating a waterfall by which it procured water power, which it transmitted to others whom it had permitted for hire to use it. The water power company transferred its holdings to the United States Government and, in turn, received from the Government the right to use one-fourth of the water power created by the plant. The cause was argued on the theory that water power right was personal property, though it was insisted by the power company that if it be considered an interest in real estate it was still exempt from taxation. It was shown that the power company did not use the power on its own premises but that various persons and corporations contracted with the power company for the use of the water power in their factories on the shore adjacent. The water power right thus retained by the Moline Water Power Company was there held to be an interest in real estate on the ground that, "Power is not a chattel. It is not a tangible entity. It manifests itself only by its results. It is merely a source of mechanical energy. But it is property, and is bought and sold in the market as freely as the products of the farm. At common law it could not be the subject of larceny, which must be of goods and chattels, but it is now protected by statute to the same extent as other forms of property, and the unauthorized connection of any gas, water or electric current with a motor or other appliance is a misdemeanor, punishable by law. (Criminal Code, par. 117.) The use of a fall of water artificially impounded is the taking of that which has been produced by the combination of arti-

ficial means and natural forces, and partakes of the nature of a *profit a prendre*. It is, in fact, an interest in the aggregate of rights constituting the water power, which is real estate. * * * The interest of the appellant thereafter [after transfer to the United States Government,] was its interest in the water power granted to it by the United States. This was an interest in real estate."

While it is true that electrical energy, like water power, was not the subject of larceny at common law, our statute on larceny (Criminal Code, sec. 167) not only embraces larceny at common law but also declares: "Larceny shall embrace every theft which deprives another of his money or other personal property, or those means or muniments by which the right and title to property, real or personal, may be ascertained." (State Bar Stat. 1935, chap. 38, par. 380.) It will be seen, therefore, that larceny, under our Criminal Code, is a term of wider application than at common law, and embraces all personal property, whether tangible or intangible, which may, in fact, be taken away. That electrical energy and water power are property, is a fact well recognized in this country, as the cases herein cited show. While the latter was held in the *Moline Water Power Company case* to be an interest in real estate, because of the facts there shown concerning its production and the nature of the property from which it was produced, there is a distinction between the creation of water power by constructing a dam and waterfall on realty, which that case holds is a *profit a prendre,* and the creation of electrical energy. Certainly, in this case, there is no element in the nature of real estate entering into such manufacture of electrical energy. Though the various generators, motors and the like may rest upon real estate, it is they, and not real estate, which create the energy.

In *United States* v. *Carlos,* 21 Philippine Rep. (1911) 553, in holding that electrical current may be the subject of larceny, it was said: "Counsel for the appellant insists

that only corporeal property can be the subject of the crime of larceny, and in support of this proposition cites several authorities for the purpose of showing that the only subjects of larceny are tangible, movable, chattels, something which could be taken in possession and carried away, and which had some, although trifling, intrinsic value, and also to show that electricity is an unknown force and cannot be a subject of larceny.. * * * It is true that electricity is no longer, as formerly, regarded by electricians as a fluid, but its·manifestations and effects, like those of gas, may be seen and felt. The true tests of what is a proper subject of larceny seems to be not whether the subject is corporeal or incorporeal, but whether it is capable of appropriation by another than the owner. It is well settled that illuminating gas may be the subject of larceny, even in the absence of a statute so providing. * * * Electricity, the same as gas, is a valuable article of merchandise, bought and sold like other personal property and is capable of appropriation by another. So no error was committed by the trial court in holding that electricity is a subject of larceny."

In *Woods* v. *People,* 222 Ill. 293, the question was whether illuminating gas could be made the subject of larceny. It was contended there, as here, that it could not. It was also there contended, as here, that the offense was not indictable as larceny because it was covered by section 117 of the Criminal Code providing punishment for those who cause gas or electricity to be consumed without first passing through a meter, such offense being, by that section of the Criminal Code, declared to be a misdemeanor. It was held, however, that the defendant who had so piped his rooms that gas was permitted to pass to his appliances without first passing through the meter, was guilty of larceny of the gas, and that such offense is indictable under the larceny statute, notwithstanding the provisions of section 117 of the Criminal Code. It was held that such were separate and distinct offenses. The opinion there cites with

approval, 2 Bishop on Criminal Law, (7th ed.) p. 779, where it was said: "Illuminating gas may be the subject of larceny; and the asportation is sufficient where the prisoner, receiving gas of a gas company, diverts some of it to his burners without its passing the meter to be measured, the means employed being to use a pipe running directly from the entrance to the exit pipe. While the pipe remains thus connected there is held to be one continuous taking." That case answers defendant's second point.

Counsel say that electricity or electrical energy is not comparable to illuminating gas; that gas is matter, while electrical energy is a power, merely. However, this test is announced in the *Woods case:* "There is nothing in the nature of gas used for illuminating purposes which renders it incapable of being feloniously taken and carried away. It is a valuable article of merchandise bought and sold like other personal property susceptible of being severed from a mass or larger quantity and of being transported from place to place." That test is applicable to electrical energy, for it will be seen, as hereinbefore pointed out, that electrical energy may likewise be taken and carried away. It is a valuable commodity, bought and sold like other personal property. It may be transported from place to place. While it is intangible, it is no less personal property and is within the larceny statute. Cases before this court construing taxing statutes, such as *Illinois Bell Telephone Co.* v. *Ames,* 364 Ill. 362, and *Peoples Gas Light and Coke Co.* v. *Ames,* 359 id. 152, holding that the utilities there affected were engaged in service rather than selling, are not inconsistent with the views herein expressed.

Counsel argue that you cannot identify the electrical energy stolen and that this is an essential element of proof of theft. It may be identified as stolen gas may be identified. If the accused attaches wires to a conductor belonging to the complaining witness, and wrongfully takes from such conductor electrical energy, without its being

measured by meter, the energy so taken is that which comes through the wires of the accused attached to the conductor of the complaining witness, and there can be no question as to its identity, since, under those facts, the electrical energy used by the accused could come from no other place. We are of the opinion, therefore, that electrical energy is the subject of larceny and is covered by our general larceny statute. The criminal court, therefore, erred in quashing the indictment.

The judgment of the criminal court is reversed and the caused is remanded, with directions to overrule the motion to quash. *Reversed and remanded, with directions.*