OPINION OF THE COURT
Rena K. Uviller, J.
Defendant moves to dismiss this Bronx County robbery indictment on the ground that it is barred by a prior New York County conviction for criminal possession of the property taken in the robbery.
*166 The defendant’s double jeopardy claim requires resolution of an issue that has received but scant and ambiguous appellate attention: Whether the crimes of robbery and that of criminal possession of its proceeds are sufficiently related under Federal constitutional principles and/or the New York Criminal Procedure Law as to bar their separate prosecutions. (See People v Artis, 74 AD2d 644.)
Even if double jeopardy principles do not apply, the facts of this case raise interesting equity considerations: May defendant fairly be subjected to two prosecutions when authorities in each county had actual knowledge of the entire criminal transaction from the beginning, were each aware of the prosecution in the other county, and where the entire transaction could have been joined in one of them? Can the Bronx prosecutor rely on New York’s lack of geographical jurisdiction over the robbery to justify this prosecution, when all the charges were originally joinable in The Bronx?
FACTS
On September 12, 1982, as Magnus Thorbenson arrived at the Bronx apartment of Betty Hill, defendant and another allegedly robbed him at knifepoint of his car keys. Thorbenson saw the two assailants drive off in his vehicle.[1]
On September 18, defendant and his brother were apprehended in Thorbenson’s car in New York County and were charged there on a felony complaint with criminal possession of stolen property. Police officers in New York County alerted the Bronx police who confirmed, through information provided by Thorbenson and Miss Hill, that the defendants were suspects in the Bronx robbery. The New York County Assistant District Attorney advised the Bronx investigating officer that he would be seeking a Manhattan indictment and promised to keep the Bronx police informed of the progress of the New York County prosecution.
In the course of the Bronx robbery investigation in the meantime, Mr. Thorbenson made a photographic identification of defendant and a felony complaint charging him *167 with robbery was filed in The Bronx on October 5. On October 8, defendant was arrested and arraigned in the Bronx Criminal Court. A Grand Jury presentation was deferred because the complainant, Mr. Thorbenson, was out of the country.
On November 30, 1982, the New York County District Attorney agreed to a reduction of the New York charges to a misdemeanor (criminal possession of stolen property in the third degree) and to defendant’s guilty plea in exchange for a sentence of 90 days. Notwithstanding actual knowledge of the pending Bronx felony complaint, the New York Assistant District Attorney did not request an adjournment in order to give the Bronx District Attorney an opportunity to secure a Bronx robbery indictment. Nor did he secure a New York County indictment for criminal possession.
Three weeks after defendant pleaded guilty to the New York charges and began serving his sentence, the Bronx police conducted a lineup for the complainant, who had returned to this country sometime before that. The instant Bronx indictment of which defendant now seeks a dismissal was filed on December 23, 1982.
DOUBLE JEOPARDY PROTECTIONS
Constitutional and statutory protections against double jeopardy bar this Bronx robbery prosecution, in light of defendant’s prior New York County conviction for possession of the property that had been taken in the robbery. These two offenses, based on the same criminal transaction, "are sufficiently related under the applicable Federal and State tests that they may not be separately prosecuted. This is so notwithstanding the fact that robbery is a much more serious crime than criminal possession and despite the fact that conviction for the lesser crime, having occurred first, now serves to shield defendant from prosecution for the greater crime.
It must be emphasized at the outset that the robbery and criminal possession charges at issue here are indeed based on the same criminal transaction. Although the New York possession conviction was based on defendant’s possession of the car on September 16, that was a continuing possession that began at the moment of the robbery in The Bronx *168 on September 12, when the owner watched defendant drive away in the car. To conclude that possession of the car four days later in another county was a separate criminal act from defendant’s possession of it in The Bronx, would impermissibly subvert double jeopardy principles. “The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.” (Brown v Ohio, 432 US 161, 169; see, also, People v Fletcher, 113 MisC 2d 5, 15; People v Lennon, 80 AD2d 672.)
FEDERAL CONSTITUTIONAL DOUBLE JEOPARDY PROTECTIONS
The double jeopardy clause of the Fifth Amendment provides that no person shall “be subject for the same offense to be twice put in jeopardy of life or limb”. In Brown v Ohio (432 US 161, supra), the Supreme Court reaffirmed the “Blockburger test” (Blockburger v United States, 284 US 299) for determining whether two offenses are the same for purposes barring successive prosecutions: “ ‘The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.’ ” (Brown v Ohio, 432 US 161, 166, quoting Blockburger v United States, 284 US 299, 304, supra.)
In applying this “identity of proof” test to the offenses of robbery and criminal possession of the property stolen, the proper focus, the Supreme Court has instructed, must be upon the statutory elements of the two crimes. (Brown v Ohio, 432 US 161, 166, supra.) That is, do each of the two offenses, as defined by statute, contain an element of proof that is not required for the other.
Our Penal Law defines robbery as an aggravated larceny, that is, a larceny in the course of which force is used (Penal Law, § 160.00). A larceny is defined as a wrongful taking, obtaining or withholding of property with intent to deprive the owner or to appropriate to someone other than the owner. (Penal Law, § 155.05.) In turn, possession, that is, “exercis[ing] dominion or control over tangible property” (Penal Law, § 10.00, subd 8) becomes criminal when *169 the possessor has an intent identical to the intent in larceny, that is to benefit a person other than the owner. (Penal Law, § 165.40.)[2] Thus, despite differences in phraseology, the intent involved in larceny and in criminal possession are indistinguishable. (See n 3, p 171, infra.)
These statutory definitions clearly show that the crime of robbery based upon a trespassory or common-law larceny by asportation, and the crime of possession of the property taken in the same robbery meet the Blockburger test: He who takes, obtains or withholds tangible property with the requisite intent (i.e., one who commits trespassory larceny) is necessarily guilty of criminally possessing that property. The use of force in the taking does not affect the intent. The crime of possession thus entails no element not contained in the crime of robbery, notwithstanding the fact that robbery obviously entails the element of forcible taking not involved in possession. Applying the Blockburger test to this case, it is clear that proof that defendant criminally possessed Mr. Thorbenson’s car required no fact that would not be required to prove this robbery; and proof that he robbed Mr. Thorbenson of the car will necessarily entail proof that the defendant criminally possessed the car. The two offenses are thus the same under Blockburger.
Concededly, a strictly abstract analysis of the statutory elements of robbery and possession would compel an opposite conclusion. That is because under the Penal Law as it was amended in 1965, larceny and robbery are not confined to asportations, that is, to trespassory takings of tangible property. Both offenses also encompass unlawful takings involving transfer of control over intangible assets, rather than a physical asportation of tangible property. Thus, under the revised Penal Law it is possible to commit a robbery without physically possessing the property stolen, by using force to effectuate the transfer of intangible assets into the robber’s control. The Practice Commentaries cite the example of a gun being held to the victim’s head to force him to arrange by telephone the transfer of funds to a third party. (See Hechtman, Practice Commentaries, *170 McKinney’s Cons Laws of NY, Book 39, Penal Law, § 160.00, p 195.)
This theoretical possibility of a robbery without physical possession suggests that criminal possession of stolen property may not be a lesser included offense of robbery or larceny for purposes of submitting lesser included charges to a jury. (CPL 300.50.) For those purposes, a crime is a lesser included offense of another only when it is impossible under any circumstances to commit the greater without, at the same time, committing the lesser offense. (People v Glover, 57 NY2d 61, 63; People v Green, 56 NY2d 427.) But the fact that under State law a defendant indicted for robbery may not be entitled to have criminal possession considered by the jury as a lesser included offense, does not defeat his Federal constitutional protection against double jeopardy where the two offenses satisfy the principles of Blockburger and its progeny.
The theoretical possibility of a robbery or a larceny which does not involve possession does not affect the conclusion that the robbery at issue here and criminal possession of its proceeds are the same offense under Blockburger. The analysis of statutory elements called for by Brown v Ohio (432 US 161, supra), in order to determine whether two offenses meet the Blockburger test, has recently been employed by the Supreme Court in a more factually specific and less abstract manner. (See Illinois v Vitale, 447 US 410; Harris v Oklahoma, 433 US 682; see, also, Pandelli v United States, 635 F2d 533.) These recent cases make clear that the Blockburger test must focus on the statutory elements contained in the legal theory of the prosecution in the case at bar and the actual facts to be proved by the prosecution in establishing that theory. The proper analysis is not merely of the abstract statutory elements, divorced from the actual prosecution theory in the given case.
For example, in Harris v Oklahoma (433 US 682, supra), the Supreme Court held that a felony murder prosecution based on a killing in the course of a robbery barred a subsequent trial for the robbery. Under the Oklahoma felony murder statute, a felony murder could be based on any number of underlying felonies other than robbery. The *171 court reasoned, however, that since robbery, and not some other felony, was the underlying crime of that particular felony murder prosecution, the defendant could not later be charged with the robbery alone. (See Illinois v Vitale, 447 US 410, 420-421, supra [discussing Harris v Oklahoma, 433 US 682, supra).)
Similarly, in Illinois v Vitale (447 US 410, supra), the issue was whether defendant’s conviction for careless failure to slow his vehicle barred a subsequent prosecution for manslaughter by automobile. The Supreme Court remanded the case to the State court for a determination of whether manslaughter by automobile invariably required proof of a failure to slow. The court cautioned, however, that if the State, as a matter of fact, were to rely on the failure to slow in prosecuting the manslaughter charge, defendant would have a “substantial” double jeopardy claim. (Illinois v Vitale, supra, p 420.)
There is no question that in proving the robbery at issue here, the People will necessarily prove facts that will also establish that defendant criminally possessed the property stolen in the robbery. That is, in proving a robbery based on a common-law larceny by asportation, as opposed to some other form of larceny, the People will be required to prove possession. And proof of possession would have contained no element not involved in this robbery. Accordingly, the two offenses of robbery and possession are the same for double jeopardy purposes under the Blockburger test, and successive prosecutions for these offenses are barred.[3]
STATUTORY DOUBLE JEOPARDY PROTECTIONS: CPL 40.20
The same analysis that sustains defendant’s constitutional double jeopardy claim serves, as well, to bring this case within the protection of New York’s statutory double jeopardy provision (CPL 40.20). Section 40.20, it has often *172 been noted, is broader than constitutional safeguards since it sets forth a general prohibition against separate prosecutions for offenses based on the same criminal transaction. Only if the case falls within certain narrowly drawn exceptions may the accused be prosecuted sequentially for different segments of the transaction. Only two of these exceptions even arguably relate to this case.
They are paragraphs (a) and (b) of subdivision 2 of section 40.20. Paragraph (a) allows multiple prosecutions for distinctly separate, sequentially occurring crimes. (See Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.20, p 248.) This exception is inapposite here where the robbery and possession charges are based on simultaneous acts.
Likewise, a second prosecution here is not authorized by the paragraph (b) exception. That paragraph permits separate prosecutions if two features coexist. First, each offense must contain an element which is not an element of the other. Second, the statutory provisions defining the offense must be aimed at preventing very different kinds of harm or evil. Although criminal possession and robbery do involve very different kinds of harm and would thus appear to permit separate prosecutions, this case founders on the conjunctive requirement of paragraph (b), to wit, that each offense contain an element that the other does not. This latter requirement mirrors the Blockburger test discussed earlier. Based upon the conclusion that possession of stolen property contains no element not involved in a trespassory robbery, the offenses do not meet the exception set forth in paragraph (b). Thus, under New York statutory law, this prosecution is also barred.
The People argue that it is both unfair and illogical to allow defendant’s misdemeanor conviction in New York to preclude his prosecution for the far more serious crime of robbery in The Bronx, especially since New York County lacked geographic jurisdiction over the robbery; further, that New York’s lack of jurisdiction means that defendant was never “in jeopardy” for robbery in that county, thus obviating double jeopardy concerns.
These unavailing objections reveal a singular failure to appreciate the significance and nature of the right not to be *173 placed in jeopardy twice for the same offense. If two offenses based on the same transaction are sufficiently related, a second prosecution is barred, notwithstanding the fact that the earlier prosecution was for the less serious offense. (Brown v Ohio, 432 US 161, 169, supra; Illinois v Vitale, 447 US 410, 421, supra [where defendant’s conviction for the relatively trivial traffic offense of failing to slow his vehicle could preclude a subsequent prosecution of manslaughter by auto].) Only where the State was unable to prosecute the more serious offense first because of the unavailability of requisite facts, may it defeat an otherwise valid double jeopardy claim. (Brown v Ohio, 432 US 161, 169, n 7, supra; CPL 40.20.)[4] Here, of course, the State and specifically the New York County District Attorney, had full knowledge of the facts and circumstances of the Bronx robbery when it chose to proceed with the lesser charges in Manhattan.
Nor does New York County’s lack of geographic jurisdiction over the robbery dilute either constitutional or statutory double jeopardy protections. Indeed, double jeopardy claims invoked under CPL 40.20 often arise where another State or the Federal Government has previously prosecuted a New York defendant for one segment of a criminal transaction, although only New York has jurisdiction over another, perhaps more serious segment of the same transaction. (See, e.g., Matter of Wiley v Altman, 52 NY2d 410 [where a previous Maryland prosecution for conspiracy to murder barred a later New York prosecution for the actual murder, even though Maryland lacked jurisdiction over the murder itself].)
As for the less protective Federal safeguard against double jeopardy, if the two offenses meet the Blockburger test, the fact that the first prosecution had no jurisdiction over some aspect of the crime is simply irrelevant. (See Brown v Ohio, 432 US 161, supra; Waller v Florida, 397 US 387.) Unless two separate sovereignties are involved, the defendant may not be twice prosecuted. This dual sovereignty exception, the Supreme Court has expressly held, however, does not apply to two counties within a single State. (Brown v Ohio, supra, p 164, n 4.)
*174 MANDATORY JOINDER AND FAIRNESS PRINCIPLES
Even if this prosecution were not barred by double jeopardy concerns, principles of mandatory joinder and basic fairness compel dismissal of the Bronx indictment. No legitimate prosecutorial interest justifies subjecting defendant to two prosecutions for a single criminal transaction when both New York and Bronx authorities were fully aware of the facts at the outset and where the entire transaction could have been prosecuted in The Bronx.
New York has codified the equity principle of mandatory joinder in CPL 40.40, a rule that prohibits separate prosecutions for offenses that are joinable “by reason of being based upon the same criminal transaction” (CPL 40.40, subd 1; see Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, CPL 40.40, p 303). The People argue, however, that because New York County had no jurisdiction over the robbery, the robbery and possession offenses were not joinable there and for that reason, CPL 40.40 does not bar this robbery prosecution in The Bronx. (Vega v Rubin, 73 AD2d 658; cf. People v Riley, 58 AD2d 816; People v Ruzas, 54 AD2d 1083.)
While it is true that the letter of CPL 40.40 requires joinder only where the offenses may be prosecuted in the very same court,[5] the spirit of the statute and the facts of this case mandate what amounts to an intercounty joinder. That is, the State’s prosecutorial arm should have been invoked in The Bronx, which had jurisdiction over both the robbery and the possession. The model standards for mandatory joinder formulated by the American Bar Association (ABA) address this problem. The ABA standards suggest that where a single court within the State does *175 have jurisdiction over all of the offenses involved, the entire transaction should be prosecuted there. (ABA Project On Minimum Stds for Criminal Justice, Stds Relating to Joinder and Severance, Std 13-2.3.)
The ABA commentary urges that if a prosecutor elects to try one segment of the offense in the court of limited rather than greater jurisdiction, subsequent prosecutions be barred. (Commentary, ABA Stds Relating to Joinder and Severance, Std 13-2.3 [a], p 13-25.)
That the New York County and Bronx County District Attorneys are independently elected and cannot control the prosecutorial decisions of the other is an unavailing excuse for these multiple prosecutions. As part of the prosecutorial arm of a single State, their failure to cooperate with one another cannot defeat otherwise legitimate procedural safeguards. As the Court of Appeals recently observed, where the People sought to defeat a speedy trial claim on the ground that the prosecutor in another county caused the delay, “Defendant is not to be disadvantaged by reason of factionalism of the prosecutorial arm of the State.” (People v Torres, 60 NY2d 119, 127.)
Equally unpersuasive is the People’s concern that a dismissal of this indictment will permit those engaged in multi-county criminal transactions to avoid prosecution for a greater crime by pleading guilty in a county that has jurisdiction only over a less serious aspect of the transaction. In this case, New York County authorities were aware of the defendant’s far greater exposure in The Bronx; they could and should have sought to adjourn the Manhattan proceedings in order to permit the Bronx prosecutor an opportunity to secure an indictment.
Indeed, the Criminal Procedure Law expressly prevents defendants from exploiting prosecutorial ignorance to utilize double jeopardy and mandatory joinder protections as a sword instead of a shield. Thus, if at the time of the first prosecution, the People do not have legally sufficient evidence available to support a greater crime, there is no bar to a second prosecution when the evidence becomes available. (CPL 40.40, subd 2.) Moreover, a prior prosecution cannot bar a later one where the earlier one “was for a lesser offense than could have been charged under the facts *176 of the case, and the prosecution was procured by the defendant, without the knowledge of the appropriate prosecutor, for the purpose of avoiding prosecution for a greater offense.” (CPL 40.30, subd 2, par [b].)
The distinguishing and controlling feature of this case is that there was a forum, to wit, The Bronx, in which all the offenses arising from this criminal transaction could and should have been tried. The equities in this case undoubtedly would have been different if New York County had had no knowledge of the Bronx prosecution, or if the defendant had exploited that ignorance to evade prosecution for the robbery.
Finally, another troubling feature of this case is the potential for multiple punishments for the same crime. Had the robbery and possession charges been tried together in The Bronx, concurrent sentences would have been required. (Penal Law, § 70.25, subd 2.) Should defendant now be convicted of robbery, no statutory mechanism exists to adjudge the mandatory sentence to reflect the 90 days he has already served for the possession. His mandatory sentence for the robbery of the car would necessarily constitute additional punishment for possessing it.
For all the foregoing reasons, the motion to dismiss the indictment is granted.

. The factual findings are based on the testimony of both defense counsel and the Assistant District Attorney at a hearing before the court; three police reports submitted by defendant; and the record documents in both the New York and Bronx prosecutions.

. When referring to criminal possession of stolen property, this opinion is concerned only with third degree possession — the crime for which defendant was convicted in New York County — as distinguished from the statutory definitions of other degrees of the crime. (See Penal Law, §§ 165.45, 165.50.)

. It has been held that criminal possession of stolen property and larceny are the same offense under the Blockburger test. (People v Fletcher, 113 MisC 2d 5, supra.) The Second Department has sought to distinguish possession from robbery, however, on the theory that the intent involved in possession differs from that involved in robbery. (See People v Artis, 74 AD2d 644, supra.) But the distinction does not survive logical scrutiny, since a robbery is merely a larceny by force, and involves the same intent. If possession and larceny involve the same intent, then so do possession and robbery. (See discussion supra.)

. Where an assault victim dies subsequent to the assault conviction, the statute expressly provides for a subsequent homicide prosecution. (CPL 40.20, subd 2, par [d].)

. CPL 40.40 provides:
“1. Where two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, pursuant to paragraph (a) of subdivision two of section 200.20, such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article.
“2. When (a) one of two or more joinable offenses of the kind specified in subdivision one is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred.” (Emphasis added.)