OPINION OF THE COURT
Robert S. Kreindler, J.
Can a person, who knowingly "possesses” a "bootlegged” or *530 "pirated” videotape be convicted of criminal possession of stolen property?[1] How is the value of such tapes determined?
Defendant moves for inspection of the Grand Jury minutes and upon inspection dismissal of the indictment.
Defendant has been indicted for the crimes of advertisement or sale of unauthorized recordings in the first degree (2 counts), advertisement or sale of unauthorized recordings in the second degree (2 counts), failure to disclose the origin of a recording in the second degree, criminal possession of a forged instrument in the third degree (3 counts) and criminal possession of stolen property in the third degree.
This court has examined the Grand Jury minutes for legal sufficiency pursuant to CPL 210.20 (1) (b). The standard applied by the court is "whether there was 'competent evidence which if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof.’ (CPL 70.10, subd 1).” (People v Warner-Lambert Co., 51 NY2d 295, 298.) In the context of a Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt (People v Mayo, 36 NY2d 1002, 1004).
The evidence indicates that defendant is the owner of three video stores. As a result of the execution of a search warrant at these stores, it was determined that defendant had between 800-900 unauthorized recordings.
Unauthorized copies of recording may come from various sources. For example, a person may videotape a show or movie shown on the television with a video cassette recorder. He/she may then duplicate that tape and distribute it. (For examples of the methods as to how unauthorized tapes can be made, without "stealing” the master tape see Dowling v United States [473 US 207, 209, n 2, supra].) There is no evidence in the Grand Jury that the unauthorized recordings were duplicated from a "stolen” master tape or from a tape that did not belong to defendant. There is no indication that the copies "possessed” by defendant were made from a tape that belonged to someone other than defendant. The only thing that could possibly be considered "stolen” is the magnetic pattern on the tape which ultimately produces video images.
*531 Examining the Grand Jury minutes for legal sufficiency, it is clear that the People have established a prima facie case with regard to counts 1-7 charging the crimes of advertisement or sale of unauthorized recording, failure to disclose the origin of a recording, and criminal possession of a forged instrument. In this regard it is noted that the Grand Jury was charged and voted as to the crime of criminal possession of a forged instrument in the third degree. The indictment, however, in part indicates "Penal Law 170.25”. That section refers to second degree criminal forgery. The body of the indictment indicates third degree forgery. The defendant is free to make any formal motion regarding this inconsistency. With regard to the sufficiency of the evidence, it is legally sufficient for the crimes voted by the Grand Jury and the crimes contained in the body of the indictment.
The eighth count charges defendant with criminal possession of stolen property in the third degree. Penal Law § 165.50 defines this crime as follows: "A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars.” (Emphasis supplied.)
Penal Law § 155.05 (2) lists the methods by which a larceny may be committed. The list contained in subdivision (2) is exclusive. If a "taking”, "obtaining”, or "appropriating” occurs in a method other than listed, while such may be "unauthorized”, it does not constitute larceny or stealing (People v Foster, 73 NY2d 596, 605-606, n 4 [rejecting the dissent’s argument that larceny can be committed by a method other than specified in subdivision (2)]).
It is clear that subdivisions (2) (b) (acquiring lost property), (2) (c) (issuing bad check), (2) (d) (false promise), and (2) (e) (extortion) are inapplicable to this matter. The only possible subdivision applicable is (2) (a). That subdivision states that larceny may be committed, "By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses”.
At common law intangible property was not the subject of larceny (United States v Davis, 5 Mason 356, 25 F Cas 781 [No. 14,930]; Jolly v United States, 170 US 402, 407; People v Zakarian, 121 Ill App 3d 968, 975, 460 NE2d 422, 427; see also, *532 Phelps v People, 72 NY 334, 349; People v Ashworth, 220 App Div 498, 501-502). Thus, common-law larceny could not have been committed by obtaining intangible images on unauthorized copies.
Further, there is no evidence in the Grand Jury of a "trespass”, "trick”, "embezzlement” or "false pretenses” as required by subdivision (2) (a) of Penal Law § 155.05. It is possible to make an unauthorized recording without taking any physical property of the copyright holder. Indeed, copies can be made by a person who is authorized to possess copies (see, Dowling v United States, 473 US 207, 209, n 2, supra, as to methods of obtaining unauthorized tapes without any "trespassory” taking), but were not authorized to transfer the images.
The court finds that none of the listed methods in subdivision (2) of Penal Law § 155.05 are applicable to this case.
Further, in order to "steal” property there must be a taking from an owner. Penal Law § 155.00 (5) defines owner as "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder.” (Italics supplied.) A person with certain privileges under copyright law does not have the right to "possession” of copyrighted material. He has a right to the economic benefit from the material, not to its possession (Dowling v United States, 473 US 207, 216-217, supra). Thus, if a person duplicates copyrighted material for personal use only, such person has a superior possessory right to the tape and its images than the holder of the copyright. However, should such person seek to sell the duplicated material, the copyright holder has a right to share in the economic benefit of the sale or transfer. The copyright holder does not, however, have a right to "possess” the tape or the images on the tape.
The court notes that the Legislature when dealing with unauthorized recordings defines the term "owner” in a totally different manner (Penal Law § 275.00 [2]). If a person who "owns” the exclusive license to reproduce or license copyrighted materials, were a person who has a superior possessory right, then there would be no necessity to have a separate and distinct definition in Penal Law § 275.00 (2). The differences in the two definitions make clear that the holder of a copyright is not a person with superior possessory rights.
The People have failed to prove that defendant is not the *533 owner of the unauthorized recordings or that there exists a person who has a superior possessory interest in the unauthorized recordings.
In addition, as part of the crime of criminal possession of stolen property, the People must show that the alleged perpetrator "possessed” stolen property. Penal Law § 10.00 (8) reads as follows: " 'Possess’ means to have physical possession or otherwise to exercise dominion or control over tangible property. ” (Emphasis supplied.)
In People v Molina (145 Misc 2d 612), the court held that a person cannot be convicted of criminal possession of intangible property because possession requires "tangible property”[2] (see also, People v Williams, 123 Misc 2d 165, 167-170). The court stated that "penal statutes are to be strictly and narrowly construed” (supra, at 615).
Penal Law § 5.00 overrules the requirement that penal statutes be strictly and narrowly construed and says: "The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.”
Penal Law § 5.00 requires that a court interpret section 10.00 "according to the fair import of their terms to promote justice and the objects of the law.”
Nonetheless, where language in a statute is clear and unambiguous, it is inappropriate to "delve into what at times is an ill-defined legislative intent” (People v Graham, 55 NY2d 144, 151). The Legislature has seen fit to limit the definition of possess to "tangible property”. It ill behooves this court to change the plain, clear and unambiguous words of the statute.
There are indications that the Legislature did not intend that possession of unauthorized recordings constitute possession of stolen property. There are policy reasons not to extend the crimes of possession of stolen property to unauthorized tapes.
When the Legislature wanted intangibles to be subject to theft crimes under title J, it specifically did so. For example, in 1986, the Legislature enacted chapter 514 of the Laws of *534 1986, dealing with "computers”. The Legislature placed the problems of computer data, programs and other computer intangibles in title J, and made it part of theft crimes. It also amended the definition of property to include computer data and programs. The Legislature clearly felt that the intangible computer programs and data needed to be specifically added to the definition of property in Penal Law § 155.00 (1).
In contrast, in 1978 when the Legislature enacted the predecessor (L 1978, ch 445) statute to the current Penal Law article 275, and in 1990 when the Legislature enacted chapter 460 of the Laws of 1990 dealing with unauthorized recordings, the crime was not placed in title J, and the definition of "property” was not amended to include "unauthorized recordings”. Also, as indicated earlier, Penal Law § 275.00 (2) has a totally different definition of the term "owner” than does Penal Law § 155.00 (5).
The Legislature when it enacted crimes regarding unauthorized recording prohibited only commercial settings not private use (see, Donnino, 1990 Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 275.00, 1992 Pocket Part, at 39). Penal Law § 275.45 (1) (b) (in his Practice Commentary Mr. Donnino cites section 275.25, which I believe to be a typographical error) specifically provides that the crimes in article 275 would not apply to personal use "without profit” or "transfer”. The Legislature has, thus, indicated that crimes involving "unauthorized recordings” should be limited to commercial and not private matters.
While, in this case, the possession was in a commercial setting, criminal possession of stolen property is not limited to commercial settings. Thus, under the People’s theory not only is defendant guilty of criminal possession of stolen property, but also guilty would be any person who rents the unauthorized recordings from defendant, if there is reason to believe that the recordings are unauthorized.
Under the People’s theory, anyone who knowingly possesses an unauthorized copy of anything would be guilty of criminal possession of stolen property. Thus, a person who purchases a duplicate of a "Gucci” or "Dior” or some other designer item, which the person has reason to believe is unauthorized, would commit the crime of possessing stolen property. The example given by the Supreme Court in Dowling v United States (473 US 207, 226, supra) is a good example of the consequences of the People’s position.
*535 In Harper & Row Publ. v Nation Enters. (471 US 539), the Supreme Court ruled that the weekly magazine The Nation had infringed the copyright of former President Ford. Are all libraries that continue to maintain copies of The Nation publication guilty of criminal possession of stolen property? Clearly, they know that former President Ford’s copyright privileges have been infringed. Yet they continue to possess these materials which the prosecutor calls "stolen”, and would under the People’s theory be guilty of a crime.
It would appear that the Legislature enacted article 275 to exclusively cover crimes relating to "unauthorized recordings”.
The court therefore finds that title J, theft crimes, was not intended to include unauthorized videotapes.
For the reasons stated above, the court finds that the People have failed to make out a prima facie case of criminal possession of stolen property in the third degree.
Count eight of the indictment is therefore dismissed.
The court also wishes to comment about the evidence at the Grand Jury relating to the value of the tapes.
At the Grand Jury presentation, an expert testified that the "wholesale” value of the tapes was "$65 apiece.”
Penal Law § 155.20 (1) states: "value means the market value of the property at the time and place of the crime” (emphasis supplied). In New York[3] value is determined by the market at the place and time of the crime (People v Irrizari, 5 NY2d 142; People v Rivera, 114 AD2d 305; People v Corbett, 129 AD2d 433). "The place and time” requirement of value includes consideration of the condition of the alleged "stolen property” (People v Medina, 111 AD2d 653, appeal dismissed 67 NY2d 644; People v James, 111 AD2d 254, affd 67 NY2d 662).
In this case, the crime of criminal possession was committed on the date the search warrants were executed in the videotape stores. Thus, the proper criteria is the market value of the tapes in video stores, in Brooklyn, not the wholesale market in an unknown location (see, People v Bazo, 139 Misc 2d 1003, 1006-1007).
There was testimony that the quality of some of the tapes *536 were poor and their physical appearance altered. These factors had to be considered in determining "value” (People v Medina, 111 AD2d 653, supra; People v Rivera, 114 AD2d 305, supra; People v Corbett, 129 AD2d 433, supra).
Further, the tapes themselves were not stolen. The value of a blank tape would have to be subtracted from the expert’s evaluation (United States v Berkwitt, 619 F2d 649, 658, supra).
The court has also reviewed the Grand Jury presentation for compliance with CPL article 190 and has reviewed the Grand Jury instructions.
While errors were committed, they did not rise to the level requiring dismissal of the indictment.
The court notes that contrary to defense counsel’s claim there is never any requirement to instruct the Grand Jury regarding circumstantial evidence (People v Jennings, 69 NY2d 103; People v Deegan, 69 NY2d 976; People v Vallone, 140 AD2d 729).
The motion to dismiss counts 1-7 is therefore denied. Count eight charging criminal possession of stolen property in the third degree is dismissed.

. The Federal courts distinguish between bootlegging and pirated tapes. "Bootlegged” tapes are unauthorized copies of commercially unreleased performances. "Pirated” tapes are unauthorized copies of commercially released tapes (see, Dowling v United States, 473 US 207, 209, n 2; Nunes v United States, 630 F Supp 1048, 1050).

. This court believes that People v Johnson (148 Misc 2d 103, 109-110) has misinterpreted the Molina case (supra). The Molina decision is not based on the definition of "possess”. Similarly, the case of People v Garland (69 NY2d 144) and People v Spatarella (34 NY2d 157) are irrelevant. Those cases deal with definition of "Property” not "possess”.

. For a discussion of the Federal court’s problem pre-Dowling with the issue of value, look at the diverse holdings discussed in United States v Berkwitt (619 F2d 649, 656-658).