THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARRELL D. RUDD, Defendant-Appellant.

Fifth District    No. 79-175

Opinion filed October 15, 1980.

John H. Reid and Patricia L. Morris, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Dull, State's Attorney, of Mt. Vernon (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

Defendant, Darrell Rudd, was charged in a three-count information with the offenses of attempt murder, attempt armed robbery, and armed violence. The armed violence charge alleged that defendant, while armed with a Category I dangerous weapon, committed the offense of attempt armed robbery "and/or" the offense of attempt murder. The question presented on appeal is whether both the attempt armed robbery and attempt murder convictions must be vacated as founded upon the same acts as the armed violence conviction.

The facts are uncontroverted. Melvin Miller testified at trial that he was involved in the offense with the defendant, Darrell Rudd. At approximately 11 p.m. on September 8, 1978, the two men discussed robbing the Huck's convenience store near the airport in Mt. Vernon, Illinois. Shortly thereafter, they arrived at the scene of the crime in a friend's car with defendant driving and parked in the alley behind the store. They pulled stocking masks over their faces. Miller was armed with an unloaded .22 pistol, while defendant had a .12-gauge shotgun. Walking around the side of the building, defendant, then Miller, entered the store. Defendant threw a brown paper bag at the cashier, and she began putting money in it. Observing a police car pull up outside, Miller ran out the door. As Miller ran, Mt. Vernon officer Holland Irwin told him to lie on the ground and "freeze." Miller complied, with his head toward the door of the building and his feet toward the squad car. A moment later defendant came out the door. Miller testified that he saw defendant stop and look at the officer. Ignoring the officer's order to halt, defendant ran. As defendant turned the corner of the store building, Miller heard a gunshot, but did not see its source.

Officer Irwin testified that he was on surveillance at Huck's at approximately 11:30 p.m. on September 8, 1978, parked in a driveway across the street. He saw a car turn in behind the store and about two minutes later saw "two heads peek around the corner of the building." The two individuals, one of whom carried a shotgun or rifle, ran into Huck's store. The area was well lighted. Irwin radioed for assistance, drove to the front of the store, and parked 10 feet from the door. He got out and positioned himself against the front bumper of his car, armed with a .12-gauge shotgun.

As the first man ran out the door, Irwin told him to "halt and hit the concrete and freeze," which he did. Almost immediately the second man, armed with a shotgun which he held in both hands, with the barrel up in the air, ran out the door, turned to his left, and ran south along the front of the building. As he ran, he lowered the gun. Irwin twice shouted at him to halt. The man kept running, and slowing slightly, swung the shotgun around behind him. A shot was then fired. The blast hit the sidewalk about seven or eight feet from Irwin, and the front door of the squad car was struck by six or eight shotgun pellets. Subsequently, Irwin discovered that he had been struck in the chest by a pellet which broke the skin but did not penetrate. In Irwin's opinion, the shot taken was a controlled, intentional movement.

After the shot, the man disappeared around the corner of the store, and Irwin heard a car leaving rapidly from that direction. A squad car arrived, and the officers then transported co-defendant Miller to the police station.

Debra Rainey, Huck's manager, testified that she was taking the cash register reading at approximately 11:30 p.m. on the night in question when a masked man came through the door with a shotgun. He pointed the cocked shotgun at her and threw a paper sack across the counter. As she began putting money into the sack, she noticed another man with a stocking cap over his face crawl under a drop-leaf on the counter, then turn and run to the front. Suspecting that the police had arrived, she did not release the sack, but instead, dropped to the floor on one knee, facing the front windows. She then observed the man with the shotgun go out the door, turn left, swing the shotgun behind him to his right and shoot. She testified that he was almost in front of the door when the shot was fired.

Subsequent investigation led police to suspect the defendant as the second robber. After being persuaded by his grandfather, defendant turned himself in to the police. At trial, defendant's testimony concerning the offense was consistent with that of the other witnesses with one exception: he testified that his gun accidentally discharged as he was running away, and that he did not intend to kill anyone.

The jury found defendant guilty on all three counts, convictions were entered on each, and defendant was sentenced to concurrent terms of 10 years for armed violence, 10 years for attempt murder, and six years for attempt armed robbery.

On appeal, defendant argues that the attempt murder and attempt armed robbery convictions are both lesser included offenses of the offense of armed violence, asserting that the armed violence charge, by its very nature, requires proof of all the elements of the other two offenses. For that reason, defendant contends that the convictions and sentences on each of the charges of attempt murder and attempt armed robbery must be vacated. We disagree.

While the "and/or" provision of the armed violence charge and jury instruction certainly adds confusion, we do not believe defendant has established a basis for vacatur of both the attempt armed robbery and attempt murder convictions. In his brief, defendant expressly describes the "and/or" provision as conjunctive in nature. Such a conclusion is not logically authorized. The jury was instructed as follows:

> "A person commits the crime of armed violence who while armed with a Category I dangerous weapon, a shotgun, committed the offense of Attempt (Armed Robbery), and or committed the offense of Attempt (murder.)"

■■ As the State concedes, the conjunction "and or" has been condemned as a barbarism, an "unsightly hieroglyphic" which "cannot be said to be in the English language." (*Tarjan v. National Surety Co.* (1932), 268 Ill. App. 232, 241-42.) Its use in pleadings and court proceedings is entirely unjustified. However, its use in the instant context, whatever its merits grammatically, is clearly in its disjunctive sense. The conjunctive "and" simply does not fit with the definition of the offense of armed violence.

Armed violence requires among its elements commission of "any felony defined by Illinois law." (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2.) The two attempts charged in this case are distinct felonies having distinct elements. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)(2), 18—2(a), 8—4.) The charges rested on distinct and separate acts, one being the demanding of money from the Huck's clerk by threat of force with a shotgun, and the other, shooting at Officer Irwin with a shotgun. Under the facts of this case, proof of commission of either attempt alone would have been sufficient to sustain the charge of armed violence, and had two charges of armed violence been filed, proof of the underlying offenses based on multiple acts would have supported convictions on both. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

There would be little purpose, however, in basing an armed violence charge on the underlying offense of attempt murder. The purpose of the

armed violence statute is "to enhance the penalty for the underlying felony when a dangerous weapon is used in its commission." (*People v. Howard* (1979), 78 Ill. App. 3d 858, 863, 397 N.E.2d 877, 881.) Both armed violence and attempt murder are Class X felonies, subject to the same penalty. By contrast, the armed violence charge serves to enhance the penalty for attempt armed robbery, which is a Class 1 felony and carries a lesser penalty. Accordingly, in the exercise of its prosecutorial discretion, the State has requested that we vacate the conviction and sentence for attempt armed robbery as the lesser included offense of armed violence, while affirming the convictions for attempt murder and armed violence based on the underlying felony of attempt armed robbery.

■■■ We feel this result is authorized. As noted, the defendant's conduct constituted separate acts which would support separate convictions for attempt murder and attempt armed robbery. (*King*, at 897.) Furthermore, despite the "and or" language of the armed violence charge, where there was sufficient proof of attempt armed robbery as the underlying felony upon which to base the armed violence charge—defendant's demanding money from Debra Rainey by threat of force with a shotgun—attempt murder is not a lesser included offense of such armed violence. For an offense to be a lesser included offense, it must not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser. (*People v. Foust* (1980), 82 Ill. App. 3d 516, 401 N.E.2d 1329, 1334-35.) Here, attempt armed robbery alone is sufficient to support the armed violence conviction, so it is clearly possible to commit armed violence without committing attempt murder.

Accordingly, defendant's conviction for attempt armed robbery is vacated. The convictions for attempt murder and for armed violence based on attempt armed robbery are affirmed.

Affirmed in part; vacated in part.

JONES, P. J., and KARNS, J., concur.