THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARSHAM ZAKARIAN *et al.*, Defendants-Appellants.
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SALEM SABA, Defendant-Appellant.

First District (1st Division)   Nos. 82—1901, 82—2111 cons.

Opinion filed February 14, 1984.

Lionel I. Brazen and Manuel Rosenstein, both of Chicago, for appellants Arsham Zakarian and Wahi Karabit.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Maria Elena Gonzalez, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Arsham Zakarian, Wahi Karabit and Salem Saba were charged by indictment with two counts of felony theft and four counts of unlawful use of recorded sounds. One count of theft and two counts of unlawful use of recorded sounds pertained to cassette tapes and recordings allegedly owned by Thomas Wiggins. The remaining counts pertained to similar property allegedly owned by Stanley Rashid. After a bench trial, defendants were found guilty of felony theft of property owned by Wiggins and of two counts of unlawful use of unidentified sound recordings. The trial court held that the latter offenses merged into the theft conviction. Zakarian was sentenced to 30 months' probation and one year periodic imprisonment and fined $5,000. He was also ordered to make restitution in the amount of $10,000. Karabit was sentenced to 30 months' probation and fined $1,000. Saba was sentenced to two years' probation.

In appeal No. 82–2111, Saba filed a notice of appeal, but has not

filed a brief. Therefore, in the exercise of our discretion under Supreme Court Rule 343 (87 Ill. 2d R. 343), we dismiss his appeal. *First Capitol Mortgage Co. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

In appeal No. 82—1901, Zakarian and Karabit contend their conviction for felony theft should be reversed for the following reasons: (1) the State failed to prove that any property, as defined in the Criminal Code of 1961, was taken from Wiggins; (2) intent to permanently deprive Wiggins of the use and benefit of his property was not proved beyond a reasonable doubt; and (3) the evidence did not establish that the property exceeded $150 in value. Defendants also contend they were improperly convicted of unlawful use of unidentified sound recordings because they were not indicted for that offense and were not proved guilty beyond a reasonable doubt. Additionally, they contend the trial court erred in merging the offenses.

We affirm in part, reverse in part, and remand.

The following evidence was adduced at trial. Stanley Rashid testified that the company for which he worked, Rashid Sales, represented the recording company EMI Greece and distributed Arabic and Greek recordings in the United States. On December 1, 1981, Rashid, Thomas Wiggins, two Chicago police officers and an attorney from the Records Industry Association of America drove to Zakarian's tape and record store. Rashid entered the store alone. He asked Karabit for a copy of the recording, "You Are My Love," sung by the Arabic artist Omkalsoum. The recording is one in a repertoire of songs copyrighted in the United States and imported and distributed here by Rashid Sales. Rashid also requested a tape of an Assyrian song sung by Walter Aziz and two other Assyrian songs from the album "Yala Ruppy and Assyrian National." Thomas Wiggins produced the latter recordings. Karabit copied the requested songs onto cassette tapes and from other tapes in the store and charged Rashid $11. Rashid left the store and gave the tapes to the two police officers. Rashid also identified photographs of the store and pointed out a high-speed duplicating machine used to record the tapes he had purchased.

Thomas Wiggins testified he was engaged in the manufacturing and wholesale distribution of musical recordings. He identified a recording agreement and master purchase agreements signed by Walter Aziz, Jermain Tamraz and Evin Aghassi. Through these agreements, Wiggins obtained exclusive rights to manufacture, sell, distribute, license or otherwise dispose of music produced under contracts with the artists. Wiggins produced recordings by these artists and had the exclusive right to manufacture products derived from the master re-

cording.

On December 1, 1981, he listened to tapes which Rashid had given to police and recognized songs sung by Tamraz and Aziz. He had not given defendants permission to sell recordings by these artists. In the three-week period after December 1, Wiggins' sales increased from $600 to $7,000. Defendants stipulated that Wiggins was president of the recording company and that he owned rights to distribute and sell the recordings in question.

Detective Frank Nelligan testified he seized racks of cassette tape recordings from Zakarian's store. He believed he seized 69 racks containing about 1,000 tapes. While at the store he saw equipment for reproducing tapes, a Xerox machine, copies of labels, and a machine for encasing tapes in plastic. Nelligan thought all the tapes he seized were numbered and labelled.

Defendants Wahi Karabit and Arsham Zakarian testified through an interpreter. Karabit testified that he sold tapes to Rashid on December 1, 1981. He was not employed by his brother Zakarian, but was working at the store that day because his brother was ill. Karabit further testified he did not know who owned the rights to the songs he recorded for Rashid and did not understand copyright principles. On cross-examination, Karabit identified a photo of the cassette recorder used to copy tapes, but could not answer questions concerning the operation of the machine.

Arsham Zakarian testified he received some tapes from his brother in Iraq and others from a store in Detroit. Many of the tapes recorded for sale in his store were reproduced from these. However, most of the tapes sold in his store were ready-made tapes purchased from Detroit and were sold without being duplicated. Twenty-eight companies in Detroit operated businesses similar to his. Zakarian further testified that he never purchased merchandise from EMI or Ninevah Record Company and none of the tapes seized in his store were manufactured by either company. Zakarian was not aware of recording rights to the songs on the tapes sold by his brother.

On cross-examination, Zakarian testified that he copied about 100 tapes each month. He used the Xerox machine to copy flyers and attached the flyers to the tapes. Total monthly sales of copied tapes amounted to $300 to $400. Most of the tapes seized belonged to him and were never duplicated for sale.

Defendants first contend they were not proved guilty of theft beyond a reasonable doubt where the State failed to prove that any property was taken from Wiggins. Indeed, there is no evidence that cassette tapes were taken from Wiggins' possession by defendants.

Our review of the record reveals that theft of tapes was not and could not have been the ground for defendants' convictions. Rather, the basis for the convictions was the invasion of Wiggins' exclusive recording rights. The State argues that by invading Wiggins' recording rights, defendants deprived Wiggins of his royalties. The State maintains that the right to royalties is a thing of value and this is property which may be the subject of theft.

At common law, only tangible personal property could be the subject of larceny. Written documents such as deeds and contracts and things growing on, affixed to, or found on land partaking of the nature of realty were not considered property for the purpose of larceny. (W. LaFave & A. Scott, Criminal Law sec. 87, at 633 (1972).) Electrical energy and water power were also excluded subjects of larceny under common law. (*People v. Menagas* (1937), 367 Ill. 330, 11 N.E.2d 403.) By legislative enactment, things not embraced by larceny under common law are considered property for the purpose of our theft statute. Section 15—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 15—1) provides:

> "As used in this Part C, 'property' means anything of value. Property includes real estate, money, commercial instruments, admission or transportation tickets, written instruments representing or embodying rights concerning anything of value, labor, or services, or otherwise of value to the owner; things growing on, affixed to, or found on land, or part of or affixed to any building; electricity, gas and water; birds, animals and fish, which ordinarily are kept in a state of confinement; food and drink; samples, cultures, microorganisms, specimens, records, recordings, documents, blueprints, drawings, maps, and whole or partial copies, descriptions, photographs, computer programs or data, prototypes or models thereof, or any other articles, materials, devices, substances and whole or partial copies, descriptions, photographs, prototypes, or models thereof which constitute, represent, evidence, reflect or record a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention, or improvement."

Our research has not revealed, nor have the parties cited, any cases addressing the issue of whether rights to sound recordings are property subject to theft. Cases discussing the types of property embraced by our theft statute are scarce. However, earlier cases state that the test is not whether the property is corporeal or incorporeal or tangible or intangible. Rather, it is whether the property is capable

of being taken and carried away by someone other than the owner. (*Menagas; Woods v. People* (1906), 222 Ill. 293, 78 N.E. 607.) In *Menagas*, the court held that electricity was personal property. Quoting from *Woods*, wherein illuminating gas had been held to be property subject to larceny, the court noted the characteristics of electricity which caused it to be included in the definition of property:

> " 'There is nothing in the nature of gas used for illuminating purposes which renders it incapable of being feloniously taken and carried away. It is a valuable article of merchandise bought and sold like other personal property, susceptible of being severed from a mass or larger quantity and of being transported from place to place.' That test is applicable to electrical energy, for it will be seen \*\*\* that electrical energy may likewise be taken and carried away. It is a valuable commodity, bought and sold like other personal property. It may be transported from place to place. While it is intangible, it is no less personal property and is within the larceny statute." (*People v. Menagas* (1937), 367 Ill. 330, 338, 11 N.E.2d 403, 407.)

The principles enunciated in *Woods* were also relied on in *Selman v. State* (Alaska 1965), 406 P.2d 181. In *Selman*, the court held that natural gas was included in the meaning of the word "goods" used in the larceny statute because gas was not intangible but had substance and was capable of being possessed.

It should be noted, too, that our statute lists only items which may be physically possessed and carried away. Section 15—1 specifies documents, things partaking of the nature of realty, and items of an informational nature or copies thereof. It has also been stated that only property which is detectable or measurable by the senses or mechanical means (52A C.J.S. *Larceny* sec. 2(c), at 408 (1968)) or property which can be moved (W. LaFave & A. Scott, Criminal Law sec. 87, at 633-34 (1972)) can be the subject of theft.

Applying the aforementioned principles to the case at bar, we find that the right invaded by defendants is not property as defined in section 15—1. While we do not dispute the State's contention that the right has intrinsic value, we nonetheless find that the right does not possess the characteristics of property defined in section 15—1. The right is not a thing which may be taken and carried away, transported from place to place or moved. It cannot be detected by the senses or measured by mechanical means. We, therefore, find that the State failed to prove beyond a reasonable doubt that property was taken from Wiggins. Consequently, defendants' convictions for theft are reversed.

■ Defendants further contend they were erroneously convicted of unlawful use of unidentified sound recordings because they were not indicted for that offense. However, indictment for one offense serves as an indictment for all included offenses even though included offenses are not specified in the indictment. (*People v. Vasquez* (1981), 97 Ill. App. 3d 1142, 424 N.E.2d 42; *People v. Evans* (1980), 87 Ill. App. 3d 714, 409 N.E.2d 562.) Thus, the issue is whether unlawful use of unidentified sound recordings is an included offense of unlawful use of recorded sounds.

Section 2—9 of the Criminal Code of 1961 provides in part:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***." (Ill. Rev. Stat. 1981, ch. 38, par. 2—9.)

In other words, all the elements of the included offense must be part of the greater. *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289, citing *People v. King* (1966), 34 Ill. 2d 199, 215 N.E.2d 223.

Defendants were charged under two sections of the unlawful use of recorded sounds statute. These sections provide:

"(a) A person commits unlawful use of recorded sounds when he:

(1) Intentionally, knowingly or recklessly transfers or causes to be transferred without the consent of the owner, any sounds recorded on any sound recording with the purpose of selling or causing to be sold, or using or causing to be used for profit the article to which such sounds or recordings of sound are transferred.

(2) Intentionally, knowingly or recklessly sells, offers for sale, advertises for sale, uses or causes to be used for profit any such article described in subsection 16—7(a)(1) without consent of the owner." (Ill. Rev. Stat. 1981, ch. 38, par. 16—7(a)(1), (a)(2).)

The statute under which they were convicted provides:

"A person commits unlawful use of unidentified sound recordings when he intentionally, knowingly, recklessly or negligently for profit manufactures, sells, distributes, vends, circulates, performs, leases or otherwise deals in and with unidentified sound recordings or causes the manufacture, sale, distribution, vending, circulation, performance, lease or other dealing in and with unidentified sound recordings." Ill. Rev. Stat. 1981, ch. 38, par. 16—8(a).

■ We have not discovered, nor have the parties cited, any cases construing the statutes in issue. Our goal then is to ascertain and give effect to the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674; *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.) The best evidence of the legislature's intent is the language of the statute itself. (*Robinson; Haron.*) The evil to be remedied and the object to be attained may also be considered. *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.

Clearly, the intent of the legislature in enacting sections 16—7 and 16—8 was to prohibit and punish sound recording piracy. A cursory examination of the relevant portions of section 16—7 indicates that the legislature intended to set out two separate offenses: transferring sounds and selling or using the items to which the sounds were transferred.

Proof of a violation of section 16—7(a)(1) requires proof that a person intentionally, knowingly, or recklessly transferred or caused the transfer of sounds, that the purpose of the transfer was the sale or use for profit of the article to which sounds were transferred, and that the transfer occurred without the owner's consent. Owner is defined as one who, "owns the master sound recording on which sound is recorded and from which the transferred recorded sounds are directly or indirectly derived." (Ill. Rev. Stat. 1981, ch. 38, par. 16—7(b)(2).) The latter element necessarily requires proof of ownership.

In interpreting section 16—7(a)(2), we are persuaded by the decision of the Florida Supreme Court in *State v. Gale Distributors, Inc.* (Fla. 1977), 349 So. 2d 150, wherein the court interpreted a statute similar to that in the case at bar. Section 543.041(2) of the Florida statutes provides:

"It is unlawful:

(a) Knowingly and willfully and without the consent of the owner, to transfer or cause to be transferred any sounds recorded on a phonograph record, disc, wire, tape, film, or other article on which sounds are recorded, with the intent to sell or cause to be sold for profit such article on which sounds are so transferred.

(b) To sell any such article with the knowledge that the sounds thereon have been so transferred without the consent of the owner." (Fla. Stat. sec. 543.041(2) (1972).)

The court held that where subsection (b) incorporated by reference subsection (a), for the purpose of determining the articles prohibited from being sold, a violation of subsection (b) required proof of all the elements of subsection (a). 349 So. 2d 150, 153-54.

■■ ▌ Here, section 16—7(a)(2) prohibits the sale or use of articles described in section 16—7(a)(1) and thus the elements of that offense must be proved to establish a violation of section 16—7(a)(2). Furthermore, the State must prove that a person intentionally, knowingly or recklessly sold or used or caused the sale or use of the article without the consent of the owner.

Regarding the elements of section 16—7, the trial court found it necessary for the State to prove that the recording from which the sounds were transferred was an identified sound recording. We believe this inference is reasonable in view of the differences between section 16—7 and section 16—8. A defendant dealing with identified sound recordings is put on notice that others may have rights to the recordings and is in a better position to attain copyright or ownership information pertaining to those recordings. His activities may be considered more culpable than those of another dealing with unidentified sound recordings who do not have similar information at hand. This theory is supported by the classification of crimes: unlawful use of recorded sounds under section 16—7 is a Class 4 felony (Ill. Rev. Stat. 1981, ch. 38, par. 16—7(c)), but unlawful use of unidentified sound recordings is a Class B misdemeanor (Ill. Rev. Stat. 1981, ch. 38, par. 16—8(b)).

Section 16—8 prohibits dealings in and with unidentified sound recordings. An unidentified sound recording is defined as, "a sound recording without the actual name and full and correct street address of the manufacturer, and the name of the actual performers or groups prominently and legibly printed on the outside cover or jacket and on the label or such sound recording." (Ill. Rev. Stat. 1981, ch. 38, par. 16—7(b)(5).) It is established by proof that a person intentionally, knowingly, recklessly or negligently, for profit, manufactures, sells, or uses unidentified sound recordings.

Comparing the elements of the aforementioned offenses, we find that section 16—8, unlawful use of unidentified sound recordings, is an included offense of section 16—7(a)(2). Section 16—7(a)(2) requires proof of a transfer, a sale or use for profit, ownership, lack of the owner's consent to the transfer and sale, and identity. Proof of these elements would necessarily include proof of the elements of section 16—8, namely, that a person manufactured, sold or used an unidentified recording for profit. Even though section 16—8 is not phrased in the same manner as section 16—7(a)(2), the prohibited activities may nonetheless be construed in this manner.

However, section 16—7(a)(1) only prohibits the transfer of sounds for the purposes of a sale or use for profit. Other acts may establish a

violation of section 16—8 and it would be possible to commit unlawful use of unidentified sound recordings the lesser offense, without committing unlawful use of recorded sounds under section 16—7(a)(1), the greater offense. Therefore, section 16—8 is not an included offense of section 16—7(a)(1). *People v. Rudd* (1980), 90 Ill. App. 3d 22, 412 N.E.2d 982.

Third, defendants contend they were not proved guilty of unlawful use of unidentified sound recordings beyond a reasonable doubt.

However, the State proved that defendants sold or caused the sale of sound recordings for profit. Thus, the State proved the elements of section 16—8 beyond a reasonable doubt.

Because of our decision, we need not address the other issues raised by defendants. We also deny the State's request for costs and fees in defending this appeal.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded for resentencing for the violation of section 16—8.

*Judgments affirmed in part, reversed in part; cause remanded.*

BUCKLEY, P.J., and GOLDBERG, J., concur.