## S06A1146. BRIGGS v. THE STATE.
### (638 SE2d 292)

THOMPSON, Justice.

We granted an interlocutory appeal in this case to determine whether OCGA § 16-8-60 (b), which criminalizes the possession and distribution of sounds or images without a label bearing the name and address of the transferor of the sounds or images, is either (1) unconstitutionally vague or overbroad, or (2) preempted by federal copyright law. The short answer to these questions is "no."

Defendant, who was found in possession of 52 individually wrapped compact discs that allegedly bear unauthorized reproductions of recorded material, was indicted for violating OCGA § 16-8-60 (b), which provides, in pertinent part:

> It is unlawful for any person . . . to sell; distribute; circulate; offer for sale, distribution or circulation; or possess for the purposes of sale, distribution or circulation any phonograph record, disc, wire, tape, videotape, film, or other article on which sounds or visual images have been transferred unless such phonograph record, disc, wire, tape, videotape, film or other article bears the actual name and address of the transferor of the sounds or visual images in a prominent place on its outside face or package.

Defendant attacked the statute and moved to dismiss the indictment on constitutional and federal preemption grounds. In granting defendant's application for interlocutory appellate review, we posed these questions: (1) Did the trial court err in its determination that OCGA § 16-8-60 is neither unconstitutionally vague nor overbroad? (2) Did the trial court err in its determination that OCGA § 16-8-60 is not preempted by federal copyright law?

1. *Unconstitutionally vague.* Defendant asserts that the phrase "transferor of the sounds or visual images," found in OCGA § 16-8-60 (b), is inherently vague and renders the statute unconstitutional. We disagree. As this court observed in *Mixon v. State*, 226 Ga. 869, 870 (178 SE2d 189) (1970):

> "The uncertainty in a statute which will amount to a denial of due process of law is not the difficulty of ascertaining whether close cases fall within or without the prohibition of the statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved; and a criminal statute is sufficiently definite if its terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." 16 AmJur2d 954, § 552.

Reading the statute as a whole, as we are bound to do, see *Lindsey v. State*, 277 Ga. 772, 773 (596 SE2d 140) (2004) (in testing constitutionality, statute is examined in its entire context), we find it to be sufficiently definite to satisfy due process standards. It is true, as defendant points out, that the statute does not itself define the term "transferor." However, we are confident that, as used in the statute, the term is clear and straightforward.

A "transferor" is one who conveys title or property to another. Black's Law Dictionary (6th ed. 1990). In the context of the statute, a "transferor of the sounds" is the individual who conveyed the sounds by transferring them to the article in question. Thus, the statute plainly prohibits the sale, or possession for the purposes of sale, of an article that does not prominently display the name and address of the individual (or entity) who transferred the sounds to the article. The

> prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness for "[i]n most English words and phrases there lurk uncertainties." . . . All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Lindsey v. State*, supra. The statute meets that due process require-ment. See also *State v. Gale Distributors*, 349 S2d 150 (Fla. 1977); *People v. Zakarian*, 460 NE2d 422 (121 Ill. App. 3d 968) (1984).

2. *Unconstitutionally overbroad.* Defendant contends the statute is overbroad because, although it may properly prohibit criminal conduct, it simultaneously chills constitutionally protected speech. In this regard, defendant argues that the statute is a content specific regulation on pure speech; that, therefore, the statute is subject to strict scrutiny; and that the statute was not narrowly tailored to achieve its goal because it compels an artist or transferor to disclose information he may wish to keep private. Defendant's contention cannot be sustained because the statute does not impinge upon pure speech. At most, the statute regulates a combination of commercial conduct and speech. Compare *McIntyre v. Ohio Elections Comm.*, 514 U. S. 334 (115 SC 1511, 131 LE2d 426) (1995) (anti-anonymity provision of political campaign literature was an unconstitutional limitation on pure speech) with *Anderson v. Nidorf*, 26 F3d 100 (9th Cir. 1994) (California statute which criminalizes the selling of re-cordings without a label did not regulate pure speech).

> Under the test enunciated in *United States v. O'Brien*, 391 U. S. 367, 376 (88 SC 1673, 20 LE2d 672) (1968), the government may regulate conduct that may have both speech and "nonspeech" elements if the regulation furthers a sub-stantial governmental interest that is unrelated to the sup-pression of free expression; and the incidental restriction on First Amendment freedom is no greater than necessary to further the governmental interest.

*State v. Miller*, 260 Ga. 669, 671 (398 SE2d 547) (1990). OCGA § 16-8-60 (b) meets the *O'Brien* test. It aims to protect the public and entertainment industry from piracy and bootlegging, a legitimate governmental interest unrelated to free speech concerns. To the extent that it can be said that it curtails an artist's or transferor's desire to remain anonymous,[1] its deterrent effect on legitimate expression is minimal. Compare *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991) (statute banning motor vehicle decal contain-ing profane words substantially affects protected speech) with *State v. Miller*, supra (anti-mask law does not affect a substantial amount of innocent behavior). The statute is not, therefore, overbroad.

---

[1] Given the nature of the entertainment industry, we suspect that very few legitimate artists or producers would actually want anonymity in the entertainment marketplace.

3. *Federal preemption.* State law rights that are the equivalent of those protected under the federal copyright law are preempted. 17 USCA § 301. To determine whether a state law is the equivalent of the federal copyright law, the courts often apply what has become known as Nimmer's[2] "extra-element" test:

> [A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display. . . . If under state law the act of reproduction, performance, distribution or display, . . . will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

*Collezione Europa U. S. A. v. Hillsdale House*, 243 FSupp.2d 444, 449 (M.D. N.C. 2003).

The statute in question, OCGA § 16-8-60 (b), criminalizes the sale, or the possession for purposes of sale, of recordings which do not carry a label identifying the "transferor" of the sounds, regardless of their copyright status. The statute does not criminalize unauthorized copyrighted works. The federal copyright law, on the other hand, protects the exclusive right of the copyright owner to reproduce, perform, distribute or display the copyrighted work. See 17 USCA § 106. Thus, the Georgia statute contains an extra element — i.e., labeling — which qualitatively distinguishes it from federal copyright law and saves it from preemption. See *Anderson v. Nidorf*, supra (California statute prohibiting sale of recordings without disclosing manufacturer and author was not preempted by federal copyright law).

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Carley, J., who concur specially, and Sears, C. J., and Melton, J., who dissent.*

HUNSTEIN, Presiding Justice, concurring specially.

I agree with the dissent that the statute is facially overbroad and that its overbreadth is "not only real but substantial as well, judged in relation to the law's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U. S. 601, 615 (93 SC 2908, 37 LE2d 830) (1973). However, unlike the dissent, I would not needlessly cast OCGA § 16-8-60 (b) aside but rather would fulfill this Court's responsibility to effectuate

---

[2] See Nimmer, The Law of Copyright, § 1.01.

the legislative intent and save it by means of a narrowing construction that would limit its application to media that has been stolen or "pirated." Because the majority applies this narrowed construction to the statute, albeit without acknowledging that it is limiting the statute's scope to avoid overbreadth problems, I concur specially in the judgment of the majority opinion.

As we have recently noted, the "effect of holding a statute to be facially overbroad is that enforcement is totally forbidden until and unless a limiting construction so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. [Cit.]" *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006). In *Fielden* the Court found overbroad a statute that made it a misdemeanor offense to "recklessly or knowingly commit[ ] any act which may reasonably be expected to prevent or disrupt a lawful meeting." Id. at 444. The statute was flawed because it did not require any actual disruption or prevention of a lawful meeting and did not require the offender to specifically intend to disrupt or prevent the meeting. See id. at 447. Although we noted that our sister states in assessing their public meeting disruption statutes had been able to cure the first flaw, namely, by inserting the additional requirement that the offender's actions substantially disrupt or prevent the meeting, see id. at 448, we determined such a remedy would not alone suffice to cure our statute because of its second flaw, namely, the intent of the offender. In light of the statute's express language focusing specifically upon the offender's intent to commit "any act" that might be expected to disrupt a lawful meeting, this Court declined to follow the dissenting position, which would have required us to rewrite the statute and substitute an intent the Court selected for the intent expressly chosen by the Legislature.

The dissent in this case now asserts that OCGA § 16-8-60 (b) must be cast aside because of an overbreadth in its language that this Court cannot cure by means of a narrowing construction. Such a construction, however, is simple in comparison to the changes that would have been required to uphold the statute in *Fielden*, supra. Contrary to the dissent's claim, this Court would not be inventing a "purpose" for OCGA § 16-8-60 (b): the Legislature's purpose is already contained within the language of the statute and reflects its intent to criminalize the sale and distribution of unauthorized reproductions of recorded commercial speech. That purpose is so palpable that the majority opinion construes the statutory language accordingly, although without acknowledging that its interpretation constitutes a narrowing of the statute. Achieving this constitutional purpose does not require rewriting the statute to substitute this Court's intent in place of express legislative language to the contrary. See *Fielden*, supra. Rather, it requires narrowing the scope of the

existing statutory language to avoid its unintended impact on constitutionally-protected anonymous speech. By interpreting OCGA § 16-8-60 (b) in this manner, the Court is fulfilling its proper role, not usurping the role of the Legislature.

> Our judicial responsibility requires us to consider the legislature's intent in enacting the law and to construe the statute to give effect to that intent when possible. This role means that we must give a narrowing construction to a statute when possible to save it from constitutional challenge. [Cits.]

*Clark v. Wade*, 273 Ga. 587, 598 (IV) (544 SE2d 99) (2001).

Therefore, because as a matter of reasonable judicial construction I would apply a narrowing construction to OCGA § 16-8-60 (b) and reject the dissent's position that such a construction can be accomplished only by substantial legislative revision, I join only in the majority's disposition of this appeal.

CARLEY, Justice, concurring specially.

I concur in the majority's holding that OCGA § 16-8-60 (b) is not unconstitutionally vague or over broad. However, as Presiding Justice Hunstein notes, I believe that the majority fails to acknowledge expressly how it arrives at that result. Like her, I find that, although OCGA § 16-8-60 (b) is facially over broad, that statute can be construed narrowly so as to survive Briggs' constitutional challenge. To that extent, I concur in Presiding Justice Hunstein's special concurrence. Nevertheless, I cannot agree with her assertion that this result is somehow inconsistent with my dissent in *State v. Fielden*, 280 Ga. 444 (629 SE2d 252) (2006). To the contrary, my position in that case is entirely consistent with upholding the constitutionality of OCGA § 16-8-60 (b) in this case. Therefore, I concur specially, but separately.

There is no disagreement over the proper analysis to be applied in cases in which a statute is challenged on grounds that it is unconstitutionally over broad. "[B]efore considering whether [a] statute that affects protected speech is [unconstitutionally] over broad, it must be determined if it can be narrowly construed by this Court." *Howard v. State*, 272 Ga. 242, 244 (1) (527 SE2d 194) (2000) (citing *Cunningham v. State*, 260 Ga. 827, 831 (400 SE2d 916) (1991)). In *Fielden*, supra, I did not, as Presiding Justice Hunstein states on p. 333 of her special concurrence, take a "position[ ] which would have required us to rewrite the statute and substitute an intent the Court selected for the intent expressly chosen by the Legislature." Instead, after considering the wording of the statute there in question, I took the position that it was "possible[ ] to save [it] from

constitutional challenge by means of a narrow construction . . . ." *State v. Fielden*, supra at 451 (Carley, J., dissenting). However, a majority of the Court in that case held otherwise, concluding that the provision could not be narrowly construed so as to avoid being stricken as unconstitutional.

When the acknowledged test for determining constitutionality as against a challenge for over broadness is applied in this case, I agree with Presiding Justice Hunstein's observation on pp. 333-334 of her special concurrence that the purpose of OCGA § 16-8-60 (b)

> is so palpable that the majority opinion construes the statutory language accordingly, although without acknowledging that its interpretation constitutes a narrowing of the statute. Achieving this constitutional purpose . . . requires narrowing the scope of the existing statutory language to avoid its unintended impact on constitutionally-protected anonymous speech. By interpreting OCGA § 16-8-60 (b) in this manner, the Court is fulfilling its proper role. . . .

Thus, the majority correctly affirms the judgment of the trial court.

MELTON, Justice, dissenting.

OCGA § 16-8-60 (b)[3] prohibits a substantial amount of constitutionally-protected speech, including anonymous political speech which has long been acknowledged to play "an important role in the progress of mankind." *Talley v. California*, 362 U. S. 60, 64 (80 SC 536, 4 LE2d 559) (1960); *McIntyre v. Ohio Elections Comm.*, 514 U. S. 334, 342 (II) (115 SC 1511, 131 LE2d 426) (1995) ("[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of freedom of speech protected by the First Amendment."). As a result, I believe that OCGA § 16-8-60 (b) is unconstitutionally overbroad and must be severed. Therefore, I must respectfully dissent from the opinion of the majority to the extent that it holds otherwise.[4]

A content-neutral statute or ordinance, i.e., one that is justified without reference to the content of the regulated

---

[3] OCGA § 16-8-60 (b) provides:
It is unlawful for any person . . . to sell; distribute; circulate; offer for sale, distribution, or circulation; or possess for the purposes of sale, distribution, or circulation any phonograph record, disc, wire, tape, videotape, film, or other article on which sounds or visual images have been transferred unless such phonograph record, disc, wire, tape, videotape, film, or other article bears the actual name and address of the transferor of the sounds or visual images in a prominent place on its outside face or package.

[4] I agree with the majority's conclusions that OCGA § 16-8-60 (b) is neither vague nor preempted by federal copyright law.

speech may limit speech if the law: (1) furthers an important governmental interest; (2) is unrelated to the suppression of speech; and (3) its incidental restriction of speech is no greater than essential to further the important governmental interest.

(Punctuation omitted.) *McKenzie v. State*, 279 Ga. 265 (626 SE2d 77) (2005). See also *United States v. O'Brien*, 391 U. S. 367, 376 (88 SC 1673, 20 LE2d 672) (1968). Furthermore, "[a] statute that is clear about what it prohibits can nevertheless be unconstitutionally overbroad if it stifles expression or conduct that is otherwise protected by the Constitution." *State v. Fielden*, 280 Ga. 444, 445 (629 SE2d 252) (2006); *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994). OCGA § 16-8-60 (b)'s unlimited restriction on all recorded anonymous speech violates both of these constitutional standards.

OCGA § 16-8-60 (b) prohibits the sale, distribution, circulation, or possession for these purposes of any videotape, disc, or other article on which sounds or visual images have been transferred unless the videotape, disc, or other article also bears the actual name of the transferor of the sounds or visual images. Thus, any sale, distribution, circulation, or possession for these purposes of any recorded material, irrespective of its content, the owner of the content, or the transferor of the content, is a criminal act if the transferor of the images or sounds remains anonymous. Furthermore, with regard to the circulation or distribution of such material, the act remains criminal irrespective of whether it is circulated or distributed with commercial intent or otherwise.

In *Talley v. California*, supra, the United States Supreme Court struck down a remarkably similar ordinance criminalizing the anonymous distribution of pamphlets, irrespective of the content therein.[5] In doing so, the Supreme Court emphasized the importance of anonymous speech in our society, stating: "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices either anonymously or not at all. . . . It is plain that anonymity has sometimes been assumed for the most constructive purposes." Id. at 64-65. Although California maintained that the ordinance in

---

[5] The Supreme Court considered Section 28.06 of the Municipal Code of the City of Los Angeles which provided:

No person shall distribute any hand-bill in any place under any circumstances, which does not have printed on the cover, or the face thereof, the name and address of the following: (a) The person who printed, wrote, compiled, or manufactured the same. (b) The person who caused the same to be distributed.

question in that case was enacted to prevent fraud, false advertising, and libel, the Supreme Court rejected this argument because the ordinance actually contained no such limitation. As such, the ordinance was subject to the infirmity that its mandate requiring the identification of a hand-bill's author and "fear of reprisal might deter perfectly peaceful discussions of public matters of importance." Id. at 65.

The only difference in the California ordinance struck down in *Talley* and the criminal statute in this case is the manner of communication of the speech. In *Talley*, the speech was written, and in this case it is recorded. For purposes of the constitutional analysis, however, this is a distinction without a difference, as both laws attempt to prohibit a substantial amount of protected speech. In application, OCGA § 16-8-60 (b), without any stated reason, would prohibit an individual from anonymously distributing recorded videotapes, discs, or the like, on which the individual transferred his or her political views by subjecting the person to criminal prosecution.[6] As one of many examples, an amateur film maker concerned about the deforestation of his or her neighborhood could not anonymously distribute a videotape or DVD chronicling this concern to members of his neighborhood and his elected officials. In criminalizing such speech, OCGA § 16-8-60 (b) steps far outside its constitutional bounds and "stifles expression or conduct that is otherwise protected by the Constitution." *Fielden*, supra at 445.

Although this Court has the authority to narrowly interpret a statute to avoid constitutional infirmities, there is no way to do so in this case because we would have to substantially revise OCGA § 16-8-60 (b), imposing upon it a purpose it unambiguously omits, namely its application only to "pirated" recordings. Although the Legislature chose to clearly and explicitly limit the application of OCGA § 16-8-60 (a) (1) and (2) to the copying, sale, distribution, or circulation of recorded sounds or images "without the consent of the person who owns the master [recording]," the Legislature decided to leave this limitation out of OCGA § 16-8-60 (b). Instead, as described above, the Legislature chose to prohibit the sale, distribution, circulation, or possession for these purposes of any and all recordings unless the transferor's name is displayed on any such recording, irrespective of the content of the recording or the intent behind its distribution.

---

[6] OCGA § 16-8-60 (c) excepts transfers "[s]olely for the personal use of the person transferring or causing the transfer and without any profit being derived by the person from the transfer." This exception, however, does not reach the nonprofit distribution of political material.

Under the doctrine of separation of powers, "statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law." (Citations and punctuation omitted.) *Etkind v. Suarez*, 271 Ga. 352, 353 (1) (519 SE2d 210) (1999). To make OCGA § 16-8-60 (b) constitutional, we would have to do just that. We would have to add a line to the law limiting it to a purpose the Legislature specifically chose not to include within it. Such an act would not just limit OCGA § 16-8-60 (b). It would change its substance altogether. Such changes must be made by the Legislature, not this Court. OCGA § 16-8-60 (b), therefore, must be severed from the statute.[7] OCGA § 1-1-3. See also *Nixon v. State*, 256 Ga. 261, 264 (3) (347 SE2d 592) (1986) ("Where one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and reserve the remainder if the remaining portion . . . accomplishes the purpose the legislature intended."). While I may not prefer this result, I believe that it is the one that a true separation of powers requires.

I am authorized to state that Chief Justice Sears joins in this dissent.

DECIDED NOVEMBER 29, 2006.

*John W. Donnelly*, for appellant.
*Kenneth W. Mauldin, District Attorney, C. Rebecca Smith, Assistant District Attorney*, for appellee.

---

[7] Even after OCGA § 16-8-60 (b) is severed from the statute, the act of pirating recorded work will remain illegal, as that act is fully covered by OCGA § 16-8-60 (a).