S09A1799. BRALEY v. CITY OF FOREST PARK.
(692 SE2d 595)

HINES, Justice.

Paul Braley ("Braley") has a leasehold interest in property in Forest Park, Georgia, where he operates a retail salvage store. Since 1984, he has displayed merchandise for sale to the public in front of the store in an area where there is a sidewalk and places to park.

In March 2007, the City of Forest Park ("City") amended its ordinances to establish a new Section 9-8-45, regulating the display of goods and merchandise for sale outside stores; the stated purpose of the ordinance is "to prohibit the obstruction of public sidewalks and parking areas by the display of goods and merchandise . . . ."

The ordinance reads:

Section 9-8-45. Outdoor Displays of Merchandise; Obstruction of Sidewalks, Public Parking Areas, and Other Public Areas Prohibited.

(a) Notwithstanding any other provision of this Code of Ordinances, merchants may display and hold out goods and merchandise for sale outdoors only if such goods and merchandise are located within and confined to an area extending not more than four (4) feet into the sidewalk measured from the outside wall of their licensed premises, but in no event shall any such goods and merchandise be placed in any portion of the sidewalk that lies within an area of at least three (3) feet in width as measured from the outer edge of the sidewalk toward the licensed premises, nor shall any such goods and merchandise be placed in any other paved areas on or adjacent to the licensed premises which are dedicated or intended for public parking or for traversing by pedestrians or motor vehicles, nor in any public right of way.

(b) Notwithstanding the foregoing, the following goods and merchandise shall not be displayed outdoors: any apparel, including but not limited to, suits, shirts, pants, jackets, socks, stockings, shoes, sandals, boots, hats, dresses, coats, and similar items intended for dressing.

(c) Motor Vehicles, whether new or used, may be displayed outdoors provided that they are displayed in accordance with other provisions of this Code of Ordinances, and State and federal law.

(d) Other items allowed for outdoor display include motor homes, recreational vehicles, travel trailers, and other units that constitute portable signs or attractions within the meaning of Chapter 3, Title 8 of this Code of Ordinances.

(e) It is the intent of the Mayor and City Council for the City of Forest Park, Georgia that the use of public sidewalks as regulated and restricted herein shall not constitute a "nonconforming use" of property as that phrase is defined in the Zoning Ordinance of the City of Forest Park, Georgia, Title 8, Chapter 8, Article D, Section 8-8-31.

(f) As used in this Section, the term "public sidewalk" shall mean and include any paved area or passageway lying adjacent to a public street or right of way that is dedicated or intended for traversing by the general public, on foot, by motor vehicles, or otherwise, whether such area or passageway is owned by a private party or in the public right of way, or not, and shall specifically include, without limitation of the generality of the foregoing, any parking spaces open to the public and other public areas dedicated or intended for traversing by the general public, on foot, by motor vehicles, or otherwise.

On April 5, 2007, the City informed Braley that he was in violation of the ordinance, and subject to criminal prosecution.[1] Braley then filed a petition for declaratory judgment and equitable relief, seeking, inter alia, that City Code § 9-8-45 be declared unconstitutional on a variety of grounds, and that the City be temporarily and permanently restrained from enforcing it. Both parties moved for summary judgment, and on March 31, 2009, the superior court entered an order granting summary judgment to the City.

---

[1] It is uncontroverted that prosecution and conviction under the City ordinances would subject Braley to a fine and incarceration.

1. Braley asserts that the definition of "public sidewalk" in City Code § 9-8-45 (f), renders the ordinance overbroad and vague, thus violating Due Process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and Art. I, Sec. I, Par. I of the Georgia Constitution.

> The Due Process Clause requires that the law give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated. Vagueness may invalidate a criminal law on either of two bases: a statute may fail to provide notice sufficient to enable ordinary people to understand what conduct it prohibits or requires, or the statute may authorize and encourage arbitrary and discriminatory enforcement. Vagueness challenges to criminal statutes that do not implicate First Amendment freedoms must be examined in the light of the facts of the case to be decided.

*Santos v. State*, 284 Ga. 514, 514-515 (1) (668 SE2d 676) (2008) (citations omitted).

> "[A] criminal statute is sufficiently definite if its terms furnish a test based on normal criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." [Cits.] Indeed, "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." [Cits.]

*Smith v. State*, 285 Ga. 725, 726 (2) (681 SE2d 161) (2009). "[W]hen the phrase challenged as vague has a commonly understood meaning, then it is sufficiently definite to satisfy due process requirements." *Bradford v. State*, 285 Ga. 1, 3 (2) (673 SE2d 201) (2009) (citation and punctuation omitted).

Braley asserts that the ordinance's definition of "public sidewalk" in subsection (f) is insufficiently definite because, after specifying certain passageways, it goes on to state that "public sidewalk" shall "specifically include, without limitation of the generality of the foregoing, any parking spaces open to the public and other public areas dedicated or intended for traversing by the general public, on foot, by motor vehicles, or otherwise." Although Braley contends that the phrase "without limitation of the generality of the foregoing" opens the definition to include any space that the City later wishes to assert falls under the ordinance, the specification of parking spaces and other areas intended for public

travel does not permit the interpretation he contends. The ordinance is sufficiently definite so that a person of ordinary intelligence need not guess at its meaning.

Braley also asserts that the ordinance is overbroad. However, he fails to identify any constitutionally protected conduct which is substantially reached by the ordinance, see *State v. Miller*, 260 Ga. 669, 673 (2) (398 SE2d 547) (1990), and thus fails to demonstrate trial court error.[2]

2. The trial court did not err in granting summary judgment to the City on Braley's claim that the ordinance effected a regulatory taking of property. To establish an unlawful taking by regulation, Braley "must show that the ordinance does not substantially advance legitimate state interests ... or [that it] denies an owner economically viable use of his land." *Greater Atlanta Homebuilders Assn. v. DeKalb County*, 277 Ga. 295, 297 (3) (a) (588 SE2d 694) (2003) (punctuation omitted). He fails to show either.

The stated purpose of the ordinance is "to prohibit the obstruction of public sidewalks and parking areas by the display of goods and merchandise . . . ." There is a legitimate government interest in safe travel, including pedestrian access. See *State of Ga. v. Cafe Erotica*, 270 Ga. 97, 99 (507 SE2d 732) (1998); *City of Atlanta v. Petkas*, 253 Ga. 447, 448 (321 SE2d 725) (1984). And, Braley fails to show that the ordinance deprives him of any economically viable use of his leasehold. He points to statements in his affidavit that he has been displaying merchandise outside his store since 1984, that doing so is crucial to his business, and that ceasing the practice will result in a "destruction of a substantial part of [the] business." But, of course, the ordinance does not require him to cease displaying his wares outside his store; it only limits the space in which such display can occur. Nor does his evidence regarding a "substantial part of [his] business" support a reasonable inference that enforcement of the ordinance would result in depriving him of an economically viable use of the premises. See *Greater Atlanta Homebuilders Assn.*, supra; *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

3. Braley asserts that the ordinance was passed without complying with the Zoning Procedures Law, OCGA § 36-66-1 et seq. However, contrary to his contention, the passage of the ordinance

---

[2] Assuming that Braley claims a commercial free speech right to display his wares as he wishes, there is no unconstitutional infringement on that right; the ordinance regulates the placement of the merchandise for reasons unrelated to the expression of ideas, and the ordinance leaves open ample channels for the communication of ideas. See *Lorillard Tobacco Co. v. Reilly*, 533 U. S. 525, 569-570 (III) (D) (121 SC 2404, 150 LE2d 532) (2001). Accord *Briggs v. State*, 281 Ga. 329, 331 (2) (638 SE2d 292) (2006).

was not a "zoning decision" as defined by OCGA § 36-66-3 (4),[3] and the ordinance was not a "zoning ordinance" as defined by OCGA § 36-66-3 (5).[4] That the ordinance regulates businesses and includes a distance restriction in its regulation of merchandise display does not render it a "zoning ordinance."

> The regulation of certain types of businesses due to their inherent character is not general and comprehensive like zoning. . . . The presence of lot size requirements or space restrictions does not transform a . . . regulatory ordinance into one governed by a zoning procedures statute where it is clear from a reading of the ordinance "as a whole that it is intended to regulate a particular occupation, rather than to regulate the general uses of land."

*Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 521-522 (1) (555 SE2d 722) (2001). The ordinance regulates businesses selling merchandise in a certain manner, and the trial court did not err in determining that the Zoning Procedures Law did not apply.

4. Evidence showed that Braley has been displaying merchandise outside his business since 1984. He contends that this qualifies his use of the property as a nonconforming use under the City's zoning ordinance. As noted in Division 3, supra, the ordinance at issue is not a zoning ordinance within the meaning of the State's Zoning Procedures Law. Further, it does not come under the definition of "non-conforming use" in the City's zoning ordinance, which is found in Title 8 of the City's ordinances. Under City Code § 8-8-31, a "non-conforming use" is defined as existing at the time of adoption of the zoning ordinance, or "at the time of adoption of an amend-

---

[3] OCGA § 36-66-3 (4) reads:
"Zoning decision" means final legislative action by a local government which results in:
    (A) The adoption of a zoning ordinance;
    (B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance;
    (C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another;
    (D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or
    (E) The grant of a permit relating to a special use of property.

[4] OCGA § 36-66-3 (5) reads:
    "Zoning ordinance" means an ordinance or resolution of a local government establishing procedures and zones or districts within its respective territorial boundaries which regulate the uses and development standards of property within such zones or districts. The term also includes the zoning map adopted in conjunction with a zoning ordinance which shows the zones and districts and zoning classifications of property therein.

ment to the zoning ordinance . . . ." The enactment of City Code § 9-8-45 did not amend the City's zoning ordinance.

5. Braley also contends that the definition of "public sidewalk" found in City Code § 9-8-45 (f) is unconstitutional as it conflicts with state law.

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). This Court has held that

> [t]he first part [of this provision] provides the rule that general laws preempt local or special laws on the same subject; the second part excepts from this rule local laws permitted by, and not conflicting with, the general law.

*Pawnmart v. Gwinnett County*, 279 Ga. 19 (1) (608 SE2d 639) (2005). Braley argues that OCGA § 40-1-1 (57)[5] defines "sidewalk" in a different manner than that used in City Code § 9-8-45 (f). But, by its specific terms, OCGA § 40-1-1 (57) is not intended to be a definition of general application, but defines the term "sidewalk" in the context of Title 40 of the Code, which is labeled "Motor Vehicles and Traffic." And, it does not appear that the definition set forth in OCGA § 40-1-1 (57) would apply elsewhere in the Code where the word "sidewalk" is used in other contexts. See, e.g., OCGA §§ 7-8-1 (1) (relating to bank remote access terminals), and 30-3-2 (7) & (8) (access to buildings by persons with disabilities). Nothing in the ordinance impairs the operation of OCGA § 40-1-1 (57), see *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 275 (2) (507 SE2d 460) (1998), and Braley cites no provision of Title 40 which would be impaired by the ordinance's regulation of obstructions of parking spaces and sidewalks.

6. Finally, the trial court ruled that the area in which Braley

---

[5] In pertinent part, OCGA § 40-1-1 reads:
> As used in this title, the term: . . .
> (57) "Sidewalk" means that portion of a street between the curb lines, or the lateral lines of a railway, and the adjacent property lines, intended for use by pedestrians.

displayed his merchandise came under the purview of the ordinance because it has been expressly dedicated to the public under OCGA § 44-5-230, which reads:

> After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes.

The trial court erred in finding that the evidence established an express dedication under OCGA § 44-5-230. " 'To prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or the general public. (Cits.)' [Cit.]" *Teague v. City of Canton*, 267 Ga. 679, 680 (2) (482 SE2d 237) (1997). No deed or other public record was introduced that made an express dedication. Compare *Hale v. City of Statham*, 269 Ga. 817 (504 SE2d 691) (1998). No parol evidence showing an express dedication was introduced. Compare *City of Abbeville v. Jay*, 205 Ga. 743, 750 (3) (55 SE2d 129) (1949). There is no evidence of record that the owner of the property on which Braley's business sits specifically intended to make an express dedication of this property by installing parking areas and pathways. Compare *Postnieks v. Chick-Fil-A, Inc.*, 285 Ga. App. 724, 728-730 (2) (a) (647 SE2d 281) (2007) (evidence regarding express dedication of a curb cut to public use). Indeed, the landowner's affidavit belies such an intention.

The City relies upon an inference that, because parking spaces and sidewalks were installed on private property, there was a dedication to public use, which was accepted by the public. But,

> [t]he mere use of one's property by a small portion of the public, even for an extended period of time, is not sufficient to authorize an inference that the property has been dedicated to a public use, unless it clearly appears that there was an intention to dedicate, and that this dedication was accepted by the public authorities, either in express terms or by implication resulting from the maintenance of a way public in its nature.

*Childs v. Sammons*, 272 Ga. 737, 738 (1) (534 SE2d 409) (2000). And, there was no evidence that the City or other governmental body maintained the property at issue, or otherwise accepted a dedication.

Compare *Ketchum v. Whitfield County*, 270 Ga. 180, 181 (508 SE2d 639) (1998).

Nonetheless, it is not necessary that there be an express dedication of property for that property to be brought into the ambit of City Code § 9-8-45. The ordinance states that it regulates the placement of goods and merchandise placed in areas "dedicated or *intended*" for parking or traversing by the general public. (Emphasis supplied.) While no evidence supported a finding of an express dedication of property, the court's order granting the City summary judgment also stated that "the portion of the Property in this case has been devoted to the public uses of sidewalks and public parking . . . ." It is clear from the evidence that such areas were created with the intention of pedestrian travel and vehicular parking, and consequently, we will affirm the trial court under the "right for any reason" rule. See *City of Gainesville v. Dodd,* 275 Ga. 834 (573 SE2d 369) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 22, 2010.

*David B. Brown, Joseph S. Key*, for appellant.
*Mack & Harris, Robert L. Mack, Jr., Joe M. Harris, Jr.*, for appellee.